## 12412

### CATHCART *ET AL.* v. STEWART *ET AL.*

#### (142 S. E., 498)

1. DEEDS—WHERE LAND PURCHASED IN 1867 FOR $7,000 WAS SOLD IN 1872 FOR OVER $11,000, DEED WILL NOT BE SET ASIDE FOR INADEQUACY OF CONSIDERATION.—Where undisputed evidence showed that land sold at sheriff's sale in 1867 for $4,000, and purchased two days later by plaintiff's ancestor for $7,000, was deeded to defendants' predecessor in title in 1872 for $11,175.16, deed from plaintiff's ancestor to defendants' predecessor will not be set aside for inadequacy of consideration.

2. DEEDS—EVIDENCE HELD INSUFFICIENT TO ESTABLISH GRANTOR'S MENTAL INCAPACITY TO EXECUTE DEED.—In suit to set aside deed, evidence *held* insufficient to establish grantor's mental incapacity to execute deed arising from insanity.

3. DEEDS—MERE INFIRMITY OF MIND OR BODY, NOT AMOUNTING TO INCAPACITY TO UNDERSTAND NATURE OF ACT, IS INSUFFICIENT TO RENDER DEED VOID.—To render a deed void on ground of grantor's mental incapacity it must appear that his mental infirmity rendered him incapable of understanding the nature of his act, and mere infirmity of mind or body, not amounting to such incapacity to understand, is insufficient.

4. INSANE PERSONS—ONE MAY BE INSANE ON ONE SUBJECT BUT CAPABLE OF TRANSACTING BUSINESS ON ALL OTHERS; QUESTION BEING WHETHER INSANITY RENDERS HIM INCAPABLE OF DOING PARTICULAR ACT WITH REASON AND UNDERSTANDING.—A man may be insane on one subject, but capable of transacting business on all others; question in any case being not merely whether he is insane at the time of questioned transaction, but whether he was so insane as to be incapable of doing the particular act with reason and understanding.

5. DEEDS—EVIDENCE HELD INSUFFICIENT TO SHOW DEED WAS PROCURED BY UNDUE INFLUENCE OR FRAUD.—In suit to set aside deed, evidence *held* insufficient to establish that deed was procured by any undue influence or fraud exercised on grantor.

6. DEEDS—"UNDUE INFLUENCE," TO AVOID DEED, MUST OVERRIDE GRANTOR'S WILL.—To avoid a deed on the ground of undue influence, evidence must show such an influence exerted on grantor as to over-

---

Note: Ability to understand nature and effect of transaction as test of capacity of grantor to execute deed, see 8 R. C. L., 946; 2 R. C. L. Supp., 695; 4 R. C. L. Supp., 584.

To render a deed void for undue influence grantor must be deprived of his free agency, which is substituted for that of another, see 8 R. C. L., 1032; 5 R. C. L. Supp., 491.

ride his will and to make the act of execution of deed a mere mechanical performance by him of the design of the person exerting the influence; "undue influence" being any influence which is so far operative as to destroy free agency.

7. INSANE PERSONS—ADJUDICATION THAT ONE PREVIOUSLY ADJUDGED INSANE WAS SANE HELD BINDING ON HIM AND HIS HEIRS.—Where one adjudged insane petitioned that inquisition and all other proceedings thereon might be set aside and his committee required to account for his acts on ground that he was of sound mind, adjudication that he was sane was conclusive against him and his heirs, as respects right to set aside deed executed by him on ground of his mental incapacity to execute it.

8. LIMITATION OF ACTIONS—ON GRANTOR'S RESTORATION TO SANITY, SIX-YEAR STATUTE BEGAN TO RUN IN FAVOR OF PURCHASER AGAINST GRANTOR'S RIGHT TO AVOID DEED FOR INSANITY.—Where grantor, who after execution of deed had been adjudged insane, was subsequently adjudged sane, statute of limitations against his cause of action to set aside the deed for insanity began to run against him when he was adjudged sane, and, no action having been brought by him or any one else in his behalf within six years thereafter, any cause of action that he had was barred.

9. EVIDENCE—PRESUMPTION IS THAT ONE ADJUDGED SANE CONTINUES SANE UNTIL AGAIN ADJUDGED INSANE.—Lunatic adjudged to be sane will be presumed to continue sane until again adjudged insane.

10. INSANE PERSONS—DECLARATIONS OF GRANTOR ADJUDGED SANE EXPRESSING SATISFACTION WITH TRANSACTION HELD RATIFICATION OF DEED ESTOPPING HIM FROM CLAIMING LAND CONVEYED.—Declarations of one adjudged to be sane, after having been previously adjudged insane, expressing satisfaction that purchasers of land from him had purchased the land and hoping that they would be able to pay for it *held* to constitute ratification of deed and to estop him and his heirs from making any claim to the land conveyed.

11. CANCELLATION OF INSTRUMENTS—PLAINTIFFS HELD NOT ENTITLED TO SUE TO SET ASIDE ANCESTOR'S DEED WITHOUT FIRST RESTORING, OR OFFERING TO RESTORE, PURCHASE MONEY.—Plaintiffs suing to set aside deed executed by their ancestor, on the ground of inadequacy of consideration, grantor's mental incapacity, and fraud and undue influence exercised on grantor, *held* not entitled to maintain the suit in equity without first restoring, or offering to restore, purchase money paid to their ancestor.

Before SHIPP, J., Fairfield, October, 1923.    Affirmed.

Suit by Thomas M. Cathcart and others against M. Esther Stewart and others.    Decree for defendants, and plaintiffs appeal.

The decree of Circuit Judge Shipp follows:

The above-entitled action was commenced about the 10th day of December, 1912, and came on for trial before me at the October, 1923, term of Court for Fairfield County.

The complaint sets up two causes of action in favor of the plaintiffs against the defendants. The first cause of action therein demands equitable relief and is triable on the equity side of the Court; the second cause of action is for the recovery of possession of a tract of land described in the complaint, together with damages, and is, therefore, triable on the law side of the Court.

The case having been docketed on Calendar 1 of the Court, the second cause of action was tried before me and a jury, at said term of Court, and, after hearing all of the testimony and the charge in the case, the jury rendered a verdict in favor of the defendants on the cause of action then tried. Subsequently, the case was transferred to Calendar 2, and the first cause of action came up for a hearing before me, at the same term of Court, upon the testimony taken on the second cause of action and the argument of counsel for the respective parties to the action.

The facts alleged in both causes of action are substantially the same, and are as follows:

That the plaintiffs are the sole heirs at law of John H. Cathcart, deceased, and his wife, Nancy Cathcart, the former having died on the 1st day of January, 1908, and the latter on the 28 day of October, 1911.

That in the year 1871 the said John H. Cathcart became insane, *non compos mentis,* and a lunatic without lucid intervals, and that he continued in this condition from the year 1871 up to the time of his death in 1908; and that during the whole of that period he was of unsound mind and did not enjoy lucid intervals; that during the whole of that period he was incapable of the government of himself or the management of his property; and that during the whole period from 1871 to the time of his death in 1908 he remained in the mental condition described in the complaint.

It is further alleged that the said John H. Cathcart, deceased, on the 12th day of August, 1867, became seized and possessed of a tract of land in Fairfield County containing 2,500 acres, known as the "Adger Place," of a part of which it is alleged that the defendants are in possession, but that the said John H. Cathcart continued in uninterrupted possession thereof up until the time of his death in January, 1908.

It is further alleged that the said John H. Cathcart, prior to and in the early part of his insanity, reposed great trust and confidence in his brother, Samuel Cathcart, who was the confidential manager of a large part of his business, and that by reason of the relations existing between them, the said Samuel Cathcart exercised an undue influence over him, and in violation of such trust and confidence reposed in him, and taking advantage of the mental incapacity of his brother, he fraudulently imposed upon him and induced the said John H. Cathcart to convey the said tract of land to him without paying any adequate consideration therefor, and that such deed was procured through fraud, undue influence, and without adequate consideration while the said John H. Cathcart was a lunatic without lucid intervals. It is alleged that said deed was procured in the month of December, 1872.

It is further alleged that, in the year 1877, one William Stewart, the husband of the defendant M. Esther Stewart, and the father of the defendants William M. Stewart and Margaret S. Beauchamp, entered into possession of 435 acres of the Adger Place above described, and that the defendants continued to occupy such part of the Adger Place after the death of said William Stewart and until a short time before the commencement of this action, when the ownership and possession thereof was transferred by them, under some agreement, to the defendants W. Julian Elliott and Daniel Hall, who, it is alleged, hold possession thereof, in connection with the other three defendants; but the plain-

tiffs allege that the defendants had notice of all the facts relating to the alleged infirmity in the title of Samuel Cathcart prior to their entry into possession of such part of the Adger Place.

Plaintiffs further allege that the facts constituting the fraud alleged in the complaint were discovered by them inside of four or six years prior to the commencement of the action.

The plaintiffs also allege that the defendants unlawfully withhold possession of said land from the plaintiffs, and that the full rental value of said land is in excess of $1,000 per annum.    In the first cause of action the plaintiffs pray that the Court, in the exercise of its equitable jurisdiction, declare that the defendants became trustees by law of the said John H. Cathcart, and that they be required to account to the plaintiffs for the rents and profits of said land since the death of the said John H. Cathcart; that the Court, also, declare the deed from John H. Cathcart to Samuel Cathcart to be null and void; that it be adjudged that the defendants have no title or interest in the said land; that they be required to surrender the possession thereof to the plaintiffs; and that they pay the plaintiffs damages thereafter in the sum of $5,000.

The defendants in their answer to the complaint set up a general denial as to both of the causes of action set forth in the complaint.

They further set up as a defense that John H. Cathcart, plaintiff's ancestor, really acquired the tract of land containing 2,500 acres for the said Samuel Cathcart, and that on the 13th day of December, 1872, in consideration of the sum of $11,175.16, the said John H. Cathcart, by his deed written by himself, conveyed the said tract of land to the said Samuel Cathcart; that at the time of the execution and delivery of said deed the said John H. Cathcart was fully competent to understand and protect his own rights and interest, and was at that time attending to, managing, and carrying

·on his own business and affairs; that he enjoyed the confidence of the community, and of all persons who had business dealings with him; that the whole transaction was attended with the utmost good faith on the part of Samuel Cathcart; and that the consideration expressed in said deed was fully and actually paid by the said Samuel Cathcart to the said John H. Cathcart.

They further allege that, on the 16th day of February, 1878, the said Samuel Cathcart, in consideration of $3,-262.50, conveyed a part of the Adger Place, also described in the complaint, to William Stewart, who paid the purchase money therefor, and that he thereby became a *bona fide* purchaser for value without notice.

The defendants further allege that John H. Cathcart was not judicially declared a lunatic until June or July, 1874; and that on the 24th day of July, 1876, he was adjudged to be a sane man by an order of the Probate Court for Fairfield County.

They further allege that in the lunacy proceedings in June, 1874, the jury impaneled therein duly found and returned to the Probate Court that John H. Cathcart had alienated two tracts of land; one of which, the Adger Place, was conveyed to Samuel Cathcart, by deed dated the 18th day of December, 1872, but that said conveyances were made upon sufficient and adequate consideration, and no advantage whatever was taken by the parties receiving such conveyances.

It is further alleged by defendants that said William Stewart, as well as his heirs at law, made valuable improvements on the tract of land conveyed to them, amounting in value to the sum of $5,000, and that on the 12th of November, 1912, they conveyed the premises to the defendants W. Julian Elliott and Daniel Hall.

It is also alleged that during the time that said John H. Cathcart was out of the asylum after 1876, he was apparently in full possession of all of his faculties of mind

and memory, and that after the conveyance of said tract of land by Samuel Cathcart to the said William Stewart he frequently visited the home of the said William Stewart, and offered no objection to his possession thereof, but on the contrary, expressed his gratification and pleasure that said Stewart had purchased the said tract of land for a home.

Defendants further set up as a bar to the action of the various Statutes of Limitation, as well as the presumption of a grant, and also the defense of purchaser for value without notice.

It is apparent from the foregoing statement of the pleadings that plaintiffs seek to set aside the deed from John H. Cathcart to Samuel Cathcart, made in December, 1872, upon three main grounds:

(1) For inadequacy of consideration.

(2) For incapacity arising from insanity.

(3) For fraud and undue influence on the part of the grantee over the grantor.

They allege that not only Samuel Cathcart, but these defendants, also, had notice at the time of the alleged incapacity of John H. Cathcart, and upon these grounds they ask that the deed in question be set aside, and that the plaintiffs be adjudged the owners of that part of the Adger Place that was conveyed to William Stewart in 1878.

1. As to the alleged inadequacy of consideration. It appears from the undisputed evidence that the Adger tract of land, containing 2,500 acres, was sold by the Sheriff of Fairfield County, on the 10th day of August, 1867, after due advertisement thereof, to W. R. Robertson, a prominent citizen of Winnsboro, for the sum of $5,236.33. The deed from the Sheriff to Robertson was duly recorded. It appears from the recitals in this deed that Robertson was the highest bidder, and that the amount of his bid was less than the debt due on the execution.

On August 12, 1867, two days afterwards, W. R. Robertson conveyed the same tract of land to John H. Cathcart,

plaintiff's ancestor, for the sum of $7,000.   On the same date, John H. Cathcart executed a mortgage of the premises to said Robertson to secure his note or bond for $4,000, one-half thereof being payable on January 1, 1869, and the balance on January 1, 1870.   This mortgage was satisfied on the record on January 31, 1872.

On the 13th day of December, 1872, John H. Cathcart conveyed the same tract of land to Samuel Cathcart for the sum of $11,175.16.   The deed recites the receipt of the purchase money, and there was no evidence offered in the case tending to show that the consideration was not paid.

Although T. M. Cathcart, one of the plaintiffs, who was quite a young man at that time, testified that the Adger Place was worth a great deal more than the sum mentioned in the deed of his father to his uncle, Samuel Cathcart, it was testified by several other witnesses that the sum of $11,175.16 was a fair and adequate price for the land at that time, owing to conditions prevailing such a short time after the close of the Civil War.   The consideration paid by Samuel Cathcart to John H. Cathcart is more than double the amount for which the land was sold at a public sale on August 10, 1867, when it was bid off by W. R. Robertson. Under all of the facts and circumstances, therefore, I am firmly convinced that there was no inadequacy of consideration in the conveyance to Samuel Cathcart, and my conviction is further strengthened by the fact that the jury in the lunacy proceedings had in 1874, after being charged with the duty of investigating the matter, reported to the Probate Court that said conveyance from John H. Cathcart was made upon full and adequate consideration.   I hold, therefore, that there is nothing in the testimony to sustain the contention of plaintiffs that there was any inadequacy of consideration in the conveyance mentioned.

2. As to the incapacity of John H. Cathcart to execute said conveyance.   The plaintiffs offered testimony tending to show that some time during the

year 1871 John H. Cathcart was taken to the state asylum for treatment, but after being there several months returned ·home about the 1st of January, 1872.   No judicial proceedings in lunacy were taken, however, until June, 1874, when a petition was filed in the Probate Court, and, after a jury had been organized and testimony taken, he was adjudged to be insane and was thereafter formally committed to the asylum, where he remained until he was discharged in the month of May, 1875.

The testimony shows that for a number of years prior to 1874, John H. Cathcart did a very extensive mercantile and banking business in Winnsboro. He also bought a great deal of cotton and was a very active business man, possessing the entire confidence of every one in the community. After his return from the asylum in the early part of 1872, he continued in business until he was adjudged insane in 1874. During the years 1872 and 1873, the testimony shows that numerous prominent citizens of the town and county loaned money to him for which he gave notes, and in the early part of 1874 he executed a mortgage of lands to Hopkins Dwight & Company of New York.

The deed from him to Samuel Cathcart was shown to be in his own handwriting, and upon its face it bears evidence of the fact that he was then in possession of his mental faculties, certainly to such an extent that he was capable of understanding and comprehending the subject of the act and its nature and consequences. This deed, written by John H. Cathcart himself, is in every respect expressed in a form and words that could not have been excelled by an attorney at law. Whatever may have been his mental condition in other respects, this deed, in his own handwriting, presents strong circumstantial evidence tending to show sufficient mental capacity to make it at that time.

The law with reference to the validity of deeds and other instruments, when assailed for lack of mental capacity, is well stated by Judge Moore, in his circuit

decree in *DuBose v. Kell*, 90 S. C., 207 and 208; 71 S. E., 371, which decree was affirmed by the Supreme Court. On page 207 (71 S. E., 376) of the report, it is said:

"Considering first the question as to the mental capacity of the grantor, the rule of law with reference to this matter may be stated in general terms to be that, while the mental incapacity which will render one unable to make a contract or a valid gift, need not be so great as entirely to dethrone the reasoning powers, there must be at the time of the act or contract such insanity or mental weakness or unsoundness as amounts to an incapacity or occasions an inability to understand or comprehend the subject of the contract or act and its nature and probable consequences, in order to render the act or contract void in law" (citing authorities).

And again on page 208 (71 S. E., 376), it is said:

"In order to render a deed void upon the ground of the mental incapacity of the grantor, it must appear that there was on his or her part such mental infirmity as to render him or her incapable of understanding the nature of the act. The test is not whether the grantor's mental powers were impaired, but whether, at the very time of the execution of the deed, he had sufficient capacity to understand in a reasonable manner the nature and effect of the act which he was performing. Mere infirmity of mind or body, not amounting to an incapacity to understand the nature and consequence of the act done, will not render a person incapable of executing a valid deed. Nor will monomania or delusion existing in the mind of the grantor affect the validity of a deed, unless it be such as to actually influence his mind in the very transaction in question by rendering him incapable of appreciating the true nature and effect of the particular act in controversy" (citing authorities).

In the case of *Cathcart v. Matthews*, 105 S. C., 329; 89 S. E., 1021, the question of John H. Cathcart's sanity or insanity was one of the questions involved and considered by the Supreme Court, and on page 343 (89

S. E., 1026), of the report, the Supreme Court says:

"It is well settled that a man may be insane on one subject, but capable of transacting business on all others. There may be a partial derangement; yet capacity to act on many subjects may exist. The question in any case is not merely whether the party was insane at the time of the questioned transaction, but whether he was so insane as to be incapable of doing the particular act with reason and understanding; that is, was he capable of comprehending the nature and effect of the transaction?"

"Neither Cathcart's confinement in the asylum nor the several adjudications of his lunacy is conclusive of the fact of incapacity. The adjudications are not conclusive even upon him or his privies, because he was not formally a party to either of them."

See, also, *Revels v. Revels,* 64 S. C., 272; 42 S. E., 111. *Hagin v. Barrow,* 103 S. C., 450; 88 S. E., 299.

Applying these well-settled principles of law to the facts established in this case, I am convinced, and so hold, that at the time John H. Cathcart executed his deed to Samuel Cathcart he was mentally competent and capable of understanding the nature of his act and deed now in question, and also its purport and consequences. Whatever unsoundness of mind may have existed as to other questions, or other subjects, the evidence shows that, as to this particular act and deed, he had sufficient mental capacity to understand its nature and consequences and, therefore, he was capable of executing a valid deed. It is, therefore, my opinion, and I so hold, that the plaintiffs have failed to establish any such mental incapacity at the time of execution as would warrant a Court of Equity in adjudging that this deed was null and void. In my opinion, the evidence clearly shows to the contrary.

3. As another ground for setting aside the deed from John H. Cathcart to Samuel Cathcart, the plaintiffs allege that it was procured through fraud and undue

influence exercised over John H. Cathcart by Samuel Cathcart, by reason of relations of trust and confidence existing between them.

The testimony shows that, in addition to a large mercantile and banking business conducted by John H. Cathcart, he was largely interested in farming operations, being the owner of a number of tracts of land in Fairfield County. It appears that Samuel Cathcart was principally engaged and employed by his brother in looking after and managing these farms, although he also assisted as a clerk, or in some other capacity, in the mercantile business. Thomas M. Cathcart, one of the plaintiffs, testified that his father reposed great trust and confidence in his uncle, Samuel Cathcart, and that Samuel Cathcart had great influence over his father. With the exception of this testimony, I do not recall any other evidence as to any relations of trust and confidence existing between these two brothers, or of any particular influence of one over the other. On the other hand, a number of witnesses testified that John H. Cathcart was a man of great firmness of purpose and strength of will, and that no one could change him in his purposes. There is certainly no direct testimony tending to show, at the time the deed in question was executed, that Samuel Cathcart exercised any influence whatever over his brother, John H. Cathcart. The deed was prepared and executed by John H. Cathcart himself on the 13th day of December, 1872. The witnesses to the deed were R. A. Herron, and W. H. Cathcart. The testimony shows that Herron had been the manager in charge of the Adger Place for John H. Cathcart for several years prior to that time, and that W. H. Cathcart was a clerk or employee in the store of John H. Cathcart. The deed was probated by the affidavit of Herron, before Samuel B. Clowney, Clerk of Court, on the 12th day of February, 1873. There was not a particle of testimony offered in the case tending to show that any conversations or negotiations took place between the grantor and the grantee

either at or prior to the time the deed was executed and delivered, or that Samuel Cathcart, at any time, by word or act of his, exercised any influence over John H. Cathcart with a view of securing the execution of this deed.   On the contrary, so far as the evidence shows, it was a free and voluntary act on the part of John H. Cathcart, arising solely from the consideration paid at the time for said conveyance. Clearly, the evidence fails to establish any undue influence or fraud on the part of Samuel Cathcart with respect to the execution of the deed.   Not only is this true, but there is circumstantial evidence showing the entire fairness of the transaction.

The record of the lunacy proceedings in the Probate Court in 1874, when John H. Cathcart was first judicially declared to be insane, was offered in evidence in the case. The commission therein directed and required the commissioners to impanel a jury to inquire into his alleged insanity, and if found to be a lunatic, whether he had alienated any lands and tenements or not, and if so, what lands and tenements and to what persons, and what lands, tenements, goods, and chattels yet remained to him.

The jury so impaneled, on the 30th day of June, 1874, made their return and findings to the Probate Court and enumerated seventeen tracts or parcels of land as then belonging to John H. Cathcart.   The jury further returned and found, with respect to lands alienated: "That said John H. Cathcart alienated two tracts of land, to wit, a plantation known as the Adger Place to Samuel Cathcart, by deed dated the 13th day of December, 1872, and a certain lot or parcel of land situated in the Town of Winnsboro, on the corner of College and Congress Streets, to John A. Brice, by deed dated the 6th day of January, 1874, but said conveyances were made upon full and adequate consideration and no advantage whatever was taken by the parties receiving said conveyances."   This tract of land and lot were therefore not enumerated as the property of John H.

Cathcart by the jury. The law with reference to setting aside deeds by a Court of Equity on account of fraud and undue influence seems to be well settled in this State.

In the case of *DuBose v. Kell,* 90 S. C., 214; 71 S. E., 378, the law is stated to be as follows:

"Where a deed is procured by undue influence exerted upon the grantor, it will be set aside by a Court of Equity upon a proper and timely application on the part of the person injured or aggrieved thereby; but, in order to avoid the deed upon this ground, there must be shown such an influence exerted upon the grantor as to overbear her will and to make the act of execution not the carrying out of a real purpose or intention of the grantor, but the mere mechanical performance by her of the wish and design of some other person. Neither fair argument, nor mere suggestion, nor even persuasion, unaccompanied by other circumstances to show a substitution of the will or purpose of some other person for that of the grantor, will amount to undue influence. In order to make it undue, it must appear that the influence exerted was such as to overcome or destroy the free will of the grantor and to make the deed as executed the expression not of his purpose, but that of some other person. 13 Cyc., 285; 9 Cyc., 455; *Revels v. Revels,* 64 S. C., 272 [42 S. E., 111], and authorities there cited. *Conley v. Nailor,* 118 U. S., 127 [6 S. Ct., 1001; 30 L. Ed., 112]."

And at the foot of page 215 (71 S. E., 379) it is further said:

"Undue influence may be said to consist in any influence which is so far operative as to destroy free agency, so as to compel the person doing the act in question to do the same against his will. It is not material how such control was exerted, whether by physical force, threats, importunities or any other species of mental or physical coercion, provided only it was so exerted as to destroy free agency and to make the act done not a true expression of the will of the person

doing it, but in truth a carrying out of the purposes of some other person against that will."

See, also, 8 R. C. L., 1032. *Pressley v. Kemp,* 16 S. C., 334 [42 Am. Rep., 635]. *Revels v. Revels,* 64 S. C., 272 [42 S. E., 111]."

Applying these principles of law to the evidence in this case, I am clearly satisfied that the plaintiffs have failed to show that the deed in question was executed by fraud or by undue influence. To my mind, the preponderance of the testimony shows to the contrary.

4. There is an additional reason why the deed in question cannot be set aside and annulled. As stated above, John H. Cathcart was not declared a lunatic and incompetent to manage his affairs until June, 1874. The testimony further shows that he was discharged from the asylum on the —— day of May, 1875; and that on or about the 20th day of April, 1876, John H. Cathcart filed his petition in the Probate Court, in which he alleged that he was then of sound mind and understanding and entirely competent to manage his own affairs, and he prayed that he might be at liberty to attend in open Court or before a referee for the purpose of being examined with respect to his sanity of mind and competency of understanding, and that the commission in lunacy, the inquisition and all the other proceedings thereon might be set aside, and that Samuel Cathcart be required to account for all his acts and doings as such committee. Testimony was taken, and on the 24th day of July, 1876, the said John H. Cathcart was adjudged to be of sound mind and memory, and capable of managing and controlling himself and affairs. At that time the deed from John H. Cathcart to Samuel Cathcart was of record in the proper office, and it was the duty of said John H. Cathcart to take notice thereof. If any fraud or undue influence had been practiced upon him by Samuel Cathcart, it was his duty to take steps to have the deed annulled, and the Statutes of Limitation were set in motion and

began to run against him. The adjudication that he was a sane man in July, 1876, is binding upon the plaintiffs herein, who are his heirs at law. *Cathcart v. Matthews,* 105 S. C., 343; 89 S. E., 1021. *Cathcart v. Hopkins,* 119 S. C., 203; 112 S. E., 64. As no action was brought by John H. Cathcart, or any one else in his behalf, within six years after the adjudication that he was a sane man, any cause of action that he had was barred by the Statutes of Limitation. For this reason, the relief that plaintiffs ask would have to be refused.

5. But there is still an additional reason why the relief demanded should be refused. The cause of action now being considered is one brought on the Equity side of the Court, and the Court will apply equitable principles in the decision of the issues arising therein. As above stated, John H. Cathcart was adjudged a sane man in July, 1876; he must then have known all of the facts and circumstances connected with the transaction, and he at least knew that Samuel Cathcart was in possession of the Adger tract of land. He was not again adjudged to be insane until some time in the month of May, 1883. In the meantime, on the 16th day of February, 1878, Samuel Cathcart had conveyed to William Stewart the tract of land now sought to be recovered in this action, containing 435 acres, and being a part of the Adger tract herein mentioned. The consideration for this conveyance was $3,262.50, which was secured by the bond of the purchaser and a mortgage of the premises, and dated the same day. This bond and mortgage were subsequently paid by the said William Stewart and his heirs at law, who had continued in open and actual possession of said land from the time of said conveyance up to the 12th day of November, 1912, when it was conveyed to the defendants W. Julian Elliott and Daniel Hall by the other defendants in this action, who are the heirs at law of the said William Stewart, now deceased.

The testimony of Mrs. M. Esther Stewart, the widow of William Stewart, which is undisputed, shows that after the conveyance of this land to William Stewart, her husband, and after John H. Cathcart had been adjudged a sane man, and prior to the year 1883, John H. Cathcart, on several occasions, visited them at their home. She testified that on one or more occasions the said John H. Cathcart expressed his pleasure and gratification that the said William Stewart had purchased the land, and also expressed the hope that he would be able to pay for it. After John H. Cathcart was declared to be a sane man in 1876, his sanity would be presumed to continue until he was again adjudged to be insane in 1883. In my opinion, he had, during that time, sufficient mental capacity to know that William Stewart had purchased a part of the Adger tract of land from Samuel Cathcart, and knew that said William Stewart was in possession, and that he had not paid the purchase money. Therefore, it seems to me his declarations would be sufficient in a Court of Equity to show a ratification of the deed to Samuel Cathcart, as well as to estop him from making any claim to that part of the land which was conveyed to William Stewart.

Declarations at the time of the visits referred to appear to be the declarations of a person in full possession of his mind and reason, at least so far as this transaction was involved. He would, therefore, be estopped from now claiming the land, and would also be barred by the Statute of Limitations, and, so also, his heirs at law would be barred.

In addition to all of this, there is no evidence of any offer on the part of the plaintiffs herein to restore the *status quo* of the parties. There is no testimony that John H. Cathcart offered to restore to Samuel Cathcart the purchase money paid to him for the Adger Place, nor any evidence that he made complaint, or evidenced any dissatisfaction, after he became sane in 1876. Nor is there any evidence that he manifested any dissatisfaction between

the year 1872 and the year 1874 when he was first adjudged to be insane. During the latter years, he was transacting his business as usual, and must have known all of the facts and circumstances connected with the transaction. I am, therefore, of the opinion, so far as the action on the Equity side of the Court is involved, that the plaintiffs would have to restore, or offer to restore, the purchase money paid to their ancestor before instituting this action to set aside this deed.

After a full and careful consideration of all of the facts and circumstances in the case, it is my deliberate judgment that John H. Cathcart was sufficiently sane in December, 1872, to enable him to execute a valid conveyance of the Adger Place to his brother, Samuel Cathcart. There is no evidence of fraud or undue influence shown in the transaction. The relief demanded by these plaintiffs in the cause of action on the Equity side of the Court must therefore be refused.

It is therefore ordered, adjudged, and decreed:

(1) That the relief demanded by the plaintiffs herein, in the first cause of action, be and the same is hereby refused, and that, as to the said cause of action, the complaint be dismissed, with costs.

(2) That the deed of conveyance from John H. Cathcart to Samuel Cathcart of the Adger Place, containing 2,500 acres of land and dated the 13th day of December, 1872, was a good and valid deed of conveyance at the time it was executed, and conveyed a fee-simple title to said lands to Samuel Cathcart.

(3) That the deed from Samuel Cathcart to William Stewart to the tract of 435 acres, being a part of the said Adger tract of land, conveyed a good and valid title to the said William Stewart.

(4) That the defendants W. Julian Elliott and Daniel Hall acquired a good and valid title to said tract of land by

the conveyance to them, executed by the heirs at law of said William Stewart, deceased.

*Mr. T. M. Cathcart,* for appellants, cites: *Lunatic's contract void:* Devereux's Kinne's Kent, 189. *Evidence:* Wharton's Law of Ev., Vol 1 (2nd Ed.), Sec. 812, 750, Sec. 1254, 389.˙ *Inquisition of lunacy cannot be traversed in Probate Court:* 10 S. C., 82.

*Messrs. McDonald & McDonald,* and *W. D. Douglas,* for respondents, cite: *Judgment of lower Court not disturbed unless appellant shows there was prejudicial error:* 86 S. C., 256; 103 S. C., 238; 97 S. C., 335; 106 S. C., 436. *Same, findings were against preponderance of evidence:* 135 S. C., 182; Id., 368. *Courts of law and equity have concurrent jurisdiction in cases of fraud:* 105 S. C., 371; 38 S. C., 199. *Effect of mental incapacity:* 8 R. C. L., 947, Sec. 22; 1 Dev. Deeds, Sec. 73. *Witness in interest competent to testify as to communication between person deceased and a third person:* 9 S. C., 279; 44 S. C., 25; 11 S. C., 36; 16 S. C., 631; 55 S. C., 510; 56 S. C., 385; 38 S. C., 272; 35 S. C., 537. *Ex parte adjudication of insanity not conclusive of the fact of incapacity:* 105 S. C., 343; 119 S. C., 212.˙ *Before seeking relief from a contract must return all benefits received:* 4 R. C. L., Secs. 23, 24, 511, 512; 52 S. C., 109; 9 C. J., 207-209; 133 S. C., 483; 56 S. C., 508.

March 27, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

After a careful examination of the record in this cause, the Court is satisfied with the able decree of his Honor S. W. G. Shipp, Circuit Judge, and the same will be reported.

The judgment of the Court is that all of the exceptions be dismissed, and the decree of the Circuit Court be and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN and STABLER concur.