15730

MATHIAS v. MATHIAS

(33 S. E. (2d), 626)

*Mr. Kenneth R. Kreps* and *Mr. F. Ehrlich Thomson,* both of Columbia, S. C., Counsel for Appellant,

*Mr. J. D. Carroll,* of Lexington, S. C., and *Mr. D. McK. Winter,* of Columbia, S. C., appear of record as Counsel for Respondent.

April 3, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court:

The plaintiff (appellant here) is about sixty-four years old. In 1939 he suffered a stroke of apoplexy which affected the use of one side of his body. His doctor described the effect as a "mild impairment" and he continued to attend to his business. He did not marry until about ten years ago and respondent is his wife, twenty years his junior. There are no children. There is no circumstantial evidence in the record of any rift in their relations until recently, and just before the commencement of this action.

In 1942 appellant was operated on in a Columbia hospital for an internal cancer and remained there, under the care of his surgeon and physician, for more than a month. Two weeks after the operation, on May 21, 1942. and when able to sit up some, he executed a deed to his wife, the respondent, conveying his home tract of land in Lexington County, containing sixty-eight acres, more or less, and known as the James Edward Mathias Mineral Springs property. Immediately after execution the deed was delivered to the grantee who procured its proper recording in the Lexington Court House on the same day, pursuant to his direction, she said.

Before further recital of the facts which we consider were established by the testimony, it should be said that appellant testified that he had no recollection of any execution of the deed, which version the special referee and the Circuit

Court did not believe, and gave no credence to it. After careful consideration of the whole trial record we find similar conclusion inescapable.

Mr. Samuel B. George, well-known citizen of Lexington, who served as Clerk of Court of that county for eighteen years, was in the habit of preparing deeds for appellant who from time to time owned considerable property and had fairly numerous real estate transactions. He prepared the instant deed and in accord with engagement with respondent (made, she testified, upon her husband's request) took it to the hospital upon the date of execution and went over it with the grantor who expressed satisfaction except that he required the insertion after the description (with reference thereto following the habendum), as follows: "reserving unto myself a home on this place as long as I live." The deed was properly signed and delivered in the presence of two witnesses (in addition to the scrivener, who did not sign as such), one of whom was the registered nurse on her daily professional duty at the bedside of the grantor. She signed the probate before Mr. George as a Notary Public, whose official seal was affixed. The deed, which was presented to this Court upon argument of the appeal, recited the consideration of "five hundred dollars and other good and sufficient considerations", but nothing was paid. It was upon a printed form, conforming to statute, and the blanks filled by neat typing, except the quoted reservation, which was inserted by Mr. George, pursuant to the grantor's instruction, with pen borrowed from the nurse.

Respondent was dutiful in her attendance upon her husband and had a cot in his hospital room, but she was not present at the time of the execution of the deed, being then in consultation in the hall with appellant's physician with reference to his assistance in procuring funds from appellant's deposit in the post office, to meet the bills incident to his operation and treatment.

Upon leaving the hospital about ten days later, appellant returned to his home (the presently disputed property) with his wife, the respondent, who continued to keep house, cook, and wait upon him, with the occasional help of other relatives and servants. Considerably over a year later, on October 11, 1943, respondent says because appellant was uncertain of the validity of the handwritten interlineation in the former deed, they went to the office of a lawyer at Lexington who prepared another deed, this from the respondent to the appellant, whereby "in consideration of the love and affection I have for the grantee" and the sum of five dollars she conveyed the identical land to her husband "for and during the term of his natural life and at his death to revert to me (the grantor-respondent) my heirs and assigns," and "reserving unto myself (the grantor-respondent) a home on this place as long as I (grantor-respondent) live." (The words within parentheses interpolated.) And the premises conveyed were described, in addition to the location, acreage and boundaries, as follows: "being the same land conveyed to me by G. M. Mathias by his deed dated May 21, 1942, and recorded in the Clerk's office for said county in deed book 5-K at page 557." This second deed was recorded by appellant on the date of execution. It was also in evidence, and was submitted to the Court at the hearing of the appeal.

In November or December following the last transaction, respondent testified when she was sick and unable then to care for her husband, he left their home and went to that of his sister and her husband. Soon afterward his brother, upon learning of the conveyance, acting, he testified, pursuant to written authority from appellant, employed counsel who instituted this action on January 20, 1944, for the setting aside of the deed of May 21, 1942, upon the grounds of (a) mental incapacity of appellant to execute the deed, and (b) fraudulent inducement on the part of respondent. The answer was

a general denial and that if the deed were questionable it was confirmed and ratified by the acceptance by appellant of the later conveyance of a life estate in the land. The case was referred by consent to the master of Richland County as special referee to take and report the testimony and his conclusions of law and fact. This he did, and his comprehensive report was a complete vindication of respondent and of the validity of the deed, and he recommended judgment in her favor. The matter was then heard by the Circuit Court upon numerous exceptions which were carefully considered *seriatim* and overruled, and the report of the referee was confirmed.

Exceptions were then taken to this Court and substituted counsel for appellant prefaced their brief with two questions which they stated in argument really raise but one, relating only to the mental capacity of the grantor to execute the deed, which, therefore, is the sole issue presented to this Court by appellant. Respondent contends that the defense of ratification was established and found, from which there was no appeal and it, therefore, controls. However, in the view we take, it is unnecessary to consider the latter question because of the failure of appellant upon the single point which he has pursued.

The law is well settled in this State, briefly to the effect that a grantor with sufficient mental ability to comprehend what he is doing and understand the nature of the act and its consequences, has capacity to make a deed. Probably no better discussion of the applicable law can be found in any decision of any Court than is contained in *DuBose v. Kell,* 90 S. C., 196, 71 S. E., 371. The authority of that case has been reaffirmed in the following subsequent decisions: *Hagin v. Barrow,* 103 S. C., 450, 88 S. E., 299; *Huggins v. Huggins,* 107 S. C., 470, 93 S. E , 129; and *Cathcart v. Stewart,* 144 S. C., 252, 142 S. E., 498.

No useful purpose would be served by an extended discussion of the evidence in this unfortunate litigation. It will suffice to say that the preponderance of it is quite clear that the grantor, the appellant, had amply sufficient mental ability at the time of his execution of the deed to comprehend, and did, what he was doing, and to fully understand the nature of his act and its consequences. And the burden of contrary proof was, of course, upon appellant who was the plaintiff in the action.

His present counsel earnestly urge the testimony of the attending physician, appellant's distant cousin, Dr. Mathias, and the surgeon, Dr. Burnside. They frankly stated that they were not alienists and therefore not experts upon the subject upon which they were questioned. And under cross examination both so weakened their testimony in chief that it must be taken to be without important value upon the ultimate question at issue.

The gist of their testimony is that appellant was not as mentally alert and up to par or possessed of as keen judgment (their expressions) as a normal and well man. The surgeon said that the operation had no effect upon his patient's mentality, such impairment as there was being due to the prior apoplexy; and that the opiates used after the operation were insufficient to affect his mental powers.

On the other hand, Mr. George, who prepared the deed and supervised the proper execution of it, and who was also well acquainted with appellant and had similarly served him before, and the signatory witnesses to the deed, were all firm and clear in their testimony which established, beyond cavil we think, abundant mental capacity on the part of the grantor to legally execute and effectually deliver the deed under attack. This Court cannot, under these circumstances, undertake to reverse the concurrent findings of the special referee and the trial judge.

The exceptions are overruled and the judgment affirmed.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER concur.