16428

BROCK v. BROCK
(61 S. E. (2d) 885)

*Messrs. Epps & Abbott,* of Conway, and *W. G. Acker,* of Pickens, *for Appellant-Respondent,*

*Messrs. W. C. Mann,* of Pickens, and *Mann, Arnold & Plyler,* of Greenville, *for Respondent-Appellant,*

November 10, 1950.

STUKES, Justice.

Plaintiff and her now deceased husband, Joe C. Brock, lived their half century and more of married life on farm land in Pickens County inherited by him from his father, which extended into the corporate limits of Central where the home is situate. They had no children and the evidence indicates that as they grew older they became more and more dependent for domestic and business help upon his only nephew, J. Leland Brock, the defendant, who lived about a half mile away, and is the successor to the family name. He is of ability and energy and engages in varied activities, including the operation of a farm and dairy, a cotton gin, and also teaches at Clemson College.

The elder Brock was of advanced age, about eighty-two, and in failing health when he executed and delivered on Nov. 30, 1945, a deed conveying in fee to defendant several parcels of real estate of estimated value of about $25,000.00, including his home place. Plaintiff renounced dower, the formality of which was attacked in the complaint and, to some extent, in the evidence, but is not involved in this appeal except incidentally. She was about ten years younger than her husband and there is no indication that she is not still fully possessed of her faculties; indeed, her testimony indicates that she is mentally, at least, well preserved.

Evidence from other occupants of the home established that for many years the maker of the deed and plaintiff repeatedly expressed their intentions that defendant should have the property and after execution of the deed they likewise expressed satisfaction that the matter was so settled. Defendant appears to have been as attentive to them and as

responsive to their needs as a son would have. At the same time, he borrowed money from his uncle on notes, the details of which were not included in the evidence. However, he paid hospital, medical, drug and other bills for necessaries for his aunt and uncle, which were likewise not proven with accuracy. Antagonism is absent even from his testimony in this case.

There is some conflict in the evidence but we think the preponderance is, as found by the trial court, that the grantor took his old deeds to a lawyer in Pickens and instructed him to prepare the deed to defendant and mail it to him with bill for services, which the lawyer did, and returned in like manner the old deeds to the grantor, in whose home they were found after his death. By mistake of the lawyer he included in the deed a tract of 119 acres which the grantor had conveyed to another many years before, which error is quite understandable and we think is not of the significance which plaintiff would attach to it. Afterward defendant procured the services of a long experienced notary public at Central, who had been magistrate for eight years, and took him and a cotton gin employee, who was also experienced in the execution of legal papers, to the Brock home where the deed was executed in their presence. The notary and the other witness to the deed testified very clearly as to all of the details of the execution and their evidence is convincing of the truth of it and leaves no doubt that plaintiff and her husband fully understood what they were doing although the deed was not read over to them, whence the persistence of the error of the inclusion of the 119 acre tract. The notary testified fully as to the renunciation of dower before him by the plaintiff.

He and the other witness to the deed said that when they entered the home they were greeted by plaintiff and her husband soon joined them. Defendant stated that they had fixed the papers, later referred to in conversation as a deed, and had come to have them (it) signed, and plaintiff responded

approvingly, whereupon they proceeded with the execution at a table in the large living room. Afterward plaintiff's husband commented, in effect, that "it is a job to deed everything you have away," and plaintiff then said, "We will be well cared for." There was no hesitation on the part of either and everything was pleasant and agreeable. Both witnesses were firm in their opinions that the grantor and his wife were entirely capable and acted knowingly and voluntarily in the execution and delivery of the deed.

Of those who testified all who had opportunity to closely observe plaintiff and her husband at or about the time of the making of the deed (except the plaintiff herself) were in agreement that both were fully capable of comprehending the nature and effect of the conveyance. There was no medical testimony although the grantor had a few months before been a patient in a hospital. The contrary testimony to the point was weak and inconclusive and came from witnesses, except the interested plaintiff, whose opportunities for observation were limited.

The grantee, the defendant, thereafter took charge of the properties and handled them as his own. He spent about $1,600.00 in enlargement, repair and painting of the home, which adapted it for occupancy by an additional couple, relatives of plaintiff, who cared for the old couple, and he gave these relatives a town building lot from other property, which was worth $2,000.00, to compensate them. He also repaired farm buildings, terraced anew and otherwise improved the lands. He made regular monthly payments of $50.00 to plaintiff until May, 1948, when this action began to brew. Meanwhile, he paid the expenses of the last illness and funeral of plaintiff's husband. There is no proof in the evidence of any dissatisfaction at the transaction or unrest of the latter during his subsequent lifetime, or of plaintiff for about a year after his death. The deed had been executed in November 1945, the grantor died May 14, 1947, and this action was commenced in September 1948. Plaintiff admit-

ted in testimony, in effect, that she realized the significance of the deed and talked to others about it within a few weeks after its execution. Will of the grantor was found after his death, made many years before, in 1927, by which he devised the property to plaintiff, which may account for her belated decision to follow her present course.

By her complaint the plaintiff sought to set aside the deed on the grounds of alleged mental incapacity of the grantor, undue influence in its execution, inadequate consideration and fraud; and asked for an accounting of rents and profits. The defendant denied in his answer all of the material allegations of the complaint and set up claim for betterments in the alleged amount of $12,000.00. Reference was had for the taking and report of the testimony upon which the case was heard by the presiding judge who found upon all issues for the defendant. However, the decree contains unusual provisions to the effect that in view of defendant's intentions, stated in his testimony, plaintiff should have the exclusive right to reside in the home, use necessary outbuildings, and receive the rentals of such portions of the house as she should desire to let to others, with the obligations on defendant to maintain the premises in repair and also pay plaintiff annually one-fourth of the net rentals and income received by him from the remainder of the property, beginning January 1, 1950. Defendant appealed from the provisions of the judgment which put these burdens upon him upon the ground of the inconsistency of them with the conclusions of fact and law; but upon argument of the case before this court, defendant's counsel expressly abandoned this appeal, whereby, upon affirmance of the decree, defendant will be bound to perform the obligations which have been stated.

The action is not an effort to establish a trust with respect to the property conveyed, as in *All v. Prillaman,* 200 S. C. 279, 20 S. E. (2d) 741, 159 A. L. R. 981, and *Scott v. Scott,* 216 S. C. 280, 57 S. E. (2d) 470,

but is a frontal assault upon the validity of the deed because of fraud in its procurement, absence of consideration, undue influence and mental incapacity. None of the alleged grounds, except that relating to consideration, was sustained by the preponderance of the evidence. Suspicion and surmise, if warranted by the evidence, are, of course, not enough. Although the draftsman stated in the deed consideration of $1,000.00, nothing was paid upon delivery. This, however, in our view is unimportant in the controversy. An important element of the ownership of property is the right of the owner to convey it on any terms within its intention. One may be a donor as readily as a vendor. Under the other facts present here this disposes of the consideration feature of plaintiff's attack upon the deed.

Plaintiff has resort in argument to the salutary principle that a grantee who occupied a position of trust and confidence with the grantor in a voluntary deed or one upon inadequate consideration has the burden of proof to show by the evidence that he was guiltless of fraud and undue influence in the procurement of the deed. Granting the applicability of the rule here, we agree with the trial court that defendant successfully met that test.

The case involves a frequent and troublesome subject of litigation. Our leading modern authority is *Page v. Lewis,* 209 S. C. 212, 39 S. E. (2d) 787. See also, *Lyon v. Bargiol,* 212 S. C. 266, 47 S. E. (2d) 625. *Page v. Lewis,* heavily relied upon, resulted successfully for plaintiffs upon facts absent here. It was said in the opinion that, quoting: "There are many other cases where deeds have been set aside, and the cases are likewise numerous where the Court has refused to set them aside, for it depends upon the facts and circumstances of the particular case." [209 S. C. 212, 39 S. E. (2d) 801.] A recent case of contrary result upon the point of mental capacity to execute a deed is *Mathias v. Mathias,* 206 S. C. 276, 33 S. E. (2d) 626. These decisions contain many citations of

authority to which reference may be had. Among them perhaps that most like this case is *Huguenin v. Adams,* 110 S. C. 407, 96 S. E. 918, where a similar deed was sustained.

In *Page v. Lewis,* there was abundant evidence of express and repeated importunities of the grantor to make the deeds against his will. Fictitious threats of impending litigation were communicated to him by those who should gain by the conveyances. There was convincing evidence of mental deterioration, proof of influence for ulterior purpose, subsequent declarations by the grantor which established his total lack of understanding of the legal effect of the deeds which he had executed; and when he awoke to it and discovered the falsity of the representations which influenced him to make the deeds, he repudiated them and brought the action to set them aside. These differences distinguish the cases without effort to point out more.

Plaintiff took many exceptions to the decree which were reduced in number by the statement of questions with which her brief on appeal was properly prefaced. Each of the questions has received careful attention and is disposed of by what has been said, without the necessity of separate discussion.

The judgment is affirmed and the costs and disbursements of the appeal will be taxed against defendant, whose appeal was abandoned.

BAKER, C. J., and TAYLOR and OXNER, JJ., and L. D. LIDE, A. A. J., concur.