0284

Victor G. RAMAGE and Jack Ramage, Respondents, v. Fred H. RAMAGE and J. Everett Ramage, Appellants.

(322 S. E. (2d) 22)

Court of Appeals

*Oxner & Oxner*, Columbia, *for appellants.*

*W. Duval Spruill*, of *Turner, Padgett, Graham & Laney,* Columbia, *for respondents.*

Heard, March 21, 1984.

Decided Sept. 25, 1984.

BELL, Judge:

This is a proceeding in equity to enforce a trust to convey real estate. The circuit court upheld the validity of the trust and directed the trustees to transfer the property in accordance with its terms. We affirm.

On July 15, 1976, Julia Lillian Evans executed a deed conveying a 150 acre tract in Saluda County to her nephews, Fred H. Ramage and J. Everett Ramage, "to hold in trust absolutely."[1] Simultaneously, she executed a Codicil to her Will. The Codicil stated, among other things:

---

[1] That same day Mrs. Evans also executed similar trust deeds to four pieces of property in Richland County and one in Lexington County. The Richland and Lexington properties are not at issue in this suit.

> I direct that Fred Ramage and Everett Ramage, who I have transferred or plan to transfer various real properties into their names as Trustees to be held In Trust, absolutely, convey said properties into my Estate to be distributed pursuant to my Will as if the properties had been held in my name individually at the time of my death.

At the time she executed these instruments, Mrs. Evans was ninety-one years old.

Mrs. Evans had a specific purpose for conveying her real properties in trust to Fred and Everett Ramage. Since an illness in 1974 she had been concerned about being "done out of her property." On the advice of her physician she went to a lawyer in April 1976. After conferring with Mrs. Evans for five to six hours to ascertain her wishes, the lawyer drafted a Will, which Mrs. Evans executed on April 7, 1976. Mrs. Evans did not want any member of her family to know the contents of the Will for fear she would be pressured to change it. To avoid this possibility, she and her lawyer agreed that the only copy of the Will would be kept in the lawyer's safe.

Not long after she executed the Will, one of her nephews, Dan Ramage, persuaded Mrs. Evans to deed certain real property to him. Afterwards, she felt Dan had coerced her to part with the land and regretted the decision. As a result of the incident with Dan, she became fearful that someone else might persuade her to convey her remaining property, leaving nothing to be distributed to those she wished to take at her death.

Mrs. Evans spoke to others, including Everett and Fred Ramage, about her distress over the conveyance to Dan. In July 1976, she asked Everett and Fred to take her to her lawyer because she wanted to change her Will. Everett accompanied her to the lawyer's office. He spoke to the lawyer about the conveyance to Dan Ramage. It was agreed that Mrs. Evans should deed her real property to Fred and Everett in trust to prevent further conveyances. The trust deeds were prepared and executed. Mrs. Evans simultaneously executed the Codicil to her Will. In addition to the directions to her trustees recited above, the codicil contained a provision deleting Dan Ramage from certain legacies and devises in the Will because she had

already transferred real property to him during her lifetime. Everett Ramage knew the Will had been changed when the trust deeds were executed, although he did not see the Will or Codicil and did not know what disposition they made of Mrs. Evans's property.

The admitted purpose of the trust deeds was to keep Mrs. Evans from conveying away her lands prior to her death. Both Fred and Everett Ramage testified they knew at the time the deeds were executed that the deeds were trust deeds, that they held the property as trustees, and that the general purpose of the trust was to prevent Mrs. Evans from conveying away any more property.

In March 1978, Fred and Everett Ramage sought advice from another attorney about the trust deeds. Acting on Everett's instructions, the second attorney drew a quitclaim deed conveying Mrs. Evans's interest in the Saluda county property to Fred and Everett. The quitclaim deed recited that it had never been her intention to convey the property in trust to Fred and Everett. After the quitclaim deed had been drafted, Fred and Everett took Mrs. Evans to the attorney's office where she executed it.

Mrs. Evans died the following year at the age of ninety-four. Her Will, which was not changed after the Codicil was executed in July 1976, devised the Saluda County property in equal shares to five nephews, Fred, Everett, Victor, Jack, and Theron Ramage. When Fred and Everett (the Trustees) refused to convey the property to Mrs. Evans's estate as directed by the Codicil, Victor and Jack brought this action to have the quitclaim deed set aside and to enforce the terms of the trust.

After holding an evidentiary hearing, the circuit court set aside the quitclaim deed because it violated the terms of the trust as understood by the Trustees. The court then ordered the Trustees to convey the property to the estate of Mrs. Evans as directed in the Codicil. From this ruling the Trustees appeal.

The Trustees' exceptions are in plain violation of Rule ■ 4, Section 6, Rules of Practice in the Supreme Court of South Carolina, because they fail to contain a complete assignment of error. Some of them also raise issues which were not framed by the pleadings nor passed on by the trial court. In these circumstances, we would be justified in dis-

missing the appeal. *See Charleston Housewrecking Co., Inc. v. Canadian Universal Insurance Co.*, 319 S. E. (2d) 338 (S. C. 1984). We have chosen, however, to consider those issues which are reasonably clear from the Trustees' arguments and which were ruled on by the trial court. *See Bartles v. Livingston*, 319 S. E. (2d) 707, Order on Rehearing (S. C. App. 1984); *Ellison v. Heritage Dodge, Inc.*, 320 S. E. (2d) 716 (S. C. App. 1984), n. 1.

## I.

We first address the Trustees' argument that the circuit judge went beyond the four corners of the trust deed to find the existence of the trust. They claim the Statute of Frauds, which requires the creation of a trust in land to be in writing, prevents the consideration of evidence other than the trust deed itself to establish the trust. *See* Section 21-27-10, Code of Laws of South Carolina, 1976. We conceive the law to be otherwise.

A trust instrument may consist of more than one writing. *Cunningham v. Cunningham*, 81 S. C. 506, 62 S. E. 845 (1908); *Peele v. LeRoy*, 222 N. C. 123, 22 S. E. (2d) 244 (1942). If each writing is signed by the settlor and the writings indicate they relate to the same transaction, the requirements of the Statute of Frauds are satisfied. *Cleveland v. Hallett*, 60 Mass. (6 Cush.) 403 (1850) (deed executed by settlor to grantee "as trustee;" although no reference to will in deed, court looked to will to ascertain terms of trust); Restatement (Second) of Trusts § 48 (1957); *see generally* G. Bogert, The Law of Trusts & Trustees, § 90 (rev. (2d) ed. 1978). The Statute is not violated by piecing together the trust instrument from the various documents which were intended to create the trust.

In this case the Codicil is the basic trust instrument. It makes reference to the trust deeds which were executed simultaneously therewith. The Codicil and the deeds are each signed by Mrs. Evans. Read together, they plainly relate to each other and show Mrs. Evans's intention to create a trust. It was proper for the circuit judge to consider both documents together in determining whether a trust had been created.

The Trustees' Statute of Frauds argument fails for an additional reason. A voluntary acknowledgment of the trust will dispense with the requirement of written proof to establish its existence. *Rutledge v. Smith,* 6 S. C. Eq. (1 McCord Eq.) 119 (1825). In this case, the Trustees both acknowledged the trust in their sworn testimony. They admitted its existence, their own status as trustees, and the purpose for which the trust was created. In view of these admissions, they cannot complain that the judge erred in finding a trust had been created.

## II.

The Trustees next contend that, if the trust deed was valid, it created a naked or passive trust which was executed by the Statute of Uses, passing title to them in fee simple absolute. *See* § 21-27-70, Code of Laws of South Carolina, 1976. They argue that the deed was ineffective to create a trust because it imposed no duties on them as trustees. Since the terms of the trust were to be ascertained from the Codicil and the deed read together, and not from the deed alone, this argument is without merit.

The trust instrument required the Trustees to hold the property until Mrs. Evans's death and then to convey it to her estate. Since it would be impossible for them to carry out these duties unless they retained legal title, the trust was not executed by the Statute of Uses. *Rentz v. Polk,* 267 S. C. 359, 228 S. E. (2d) 106 (1976); *Johnson v. Thornton,* 264 S. C. 252, 214 S. E. (2d) 124 (1975).

## III.

The Trustees also argue that they had no notice of the trust because they did not know the contents of the Codicil until Mrs. Evans died. Thus, they assert, the trust was not binding on them.

This argument is belied by the Trustees' own testimony. Each said he knew the Saluda property was being transferred in trust to protect Mrs. Evans from conveying it during her lifetime. It was not necessary for the Trustees to know the precise terms of the Codicil to be bound by the trust. They knew the purpose of the trust and they accepted the status of trustees. Having done so, their title was

subject to the trust whether or not they knew the ultimate disposition Mrs. Evans wished to make of the property. *Cloud v. Calhoun,* 31 S. C. Eq. (10 Rich. Eq.) 358 (1858); *see also Chaplain v. Givens,* 14 S. C. Eq. (Rice Eq.) 132 (1839) (trustee who, with knowledge of trust, interferes with trust property cannot thereafter repudiate trust).

## IV.

Finally, the Trustees maintain the trust was revoked when Mrs. Evans conveyed her interest to them by the quitclaim deed. To sustain their position would require us to hold, first, that the trust was revocable even though no power of revocation was reserved in the trust instrument and, secondly, that the Trustees have carried their burden of proving the transaction was not in breach of the fiduciary duty they owed Mrs. Evans in dealing with trust property. Because the Trustees have failed to persuade us on the second point, we need not reach the first.

The Trustees assert the circuit judge erred in setting ▮ aside the quitclaim deed, because there was no proof they used undue influence in procuring the deed from Mrs. Evans. The argument betrays a fundamental misconception of the Trustees' legal duty as fiduciaries. The Trustees must show more than a mere absence of undue influence when they ask a court to uphold the validity of a self interested transaction in trust property with the beneficiary of the trust.

Fred and Everett Ramage held the Saluda property as ▮ trustees for Mrs. Evans. As trustees, they were under a duty of loyalty to administer the trust property solely in her interest as the beneficiary. *Wachovia Bank & Trust Co. v. Johnston,* 269 N. C. 701, 153 S. E. (2d) 449 (1967); G. Bogert, *supra,* § 543. They had a duty to exclude all selfish interest in their dealings on her behalf. *McNeil v. Morrow,* 9 S. C. Eq. (Rich. Cas.) 172 (1832). While the conveyance of Mrs. Evans's interest by the quitclaim deed might have been valid as an arm's length transaction, the Trustees were not dealing with Mrs. Evans at arm's length: they were fiduciaries. "Many forms of conduct permissible in a workday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place." *Meinhard v. Salmon,* 249 N. Y. 458, 464, 164 N. E. 545, 546 (1928) (Cardozo, C. J.).

In this case, the conveyance of Mrs. Evan's interest by the quitclaim deed was contrary to the very purpose of the trust. The Trustees knew they held title to protect Mrs. Evans from conveying the property. There is no question that their acceptance of the quitclaim deed not only defeated that purpose, but also constituted a blatantly self interested act. Since they gave no value in exchange for the property, the underlying fairness of the transaction to the beneficiary is also questionable. On the face of it, these facts disclose a breach of fiduciary duty by the Trustees.

If the Trustees now wish to uphold the validity of the transaction, the burden is on them to rebut the presumption of disloyalty created by their self interested dealing with the beneficiary of the trust. *Gostomske v. Sommerfield*, 15 Ill. App. (2d) 478, 146 N. E. (2d) 702 (1958); *Swift v. Craighead*, 75 N. J. Eq. 102, 75 A. 974 (1909); *cf. Brock v. Brock*, 218 S. C. 174, 61 S. E. (2d) 885 (1950) (grantee who has occupied position of trust with grantor in voluntary deed has burden of showing he was guiltless of fraud and undue influence). The Trustees' claim that they exercised no undue influence over Mrs. Evans falls far short of the proof required to sustain the validity of the quitclaim deed. Given the evidence before him, the circuit judge was correct in setting the deed aside. It was unnecessary to find undue influence or bad faith. The Trustees' active participation in a transfer of trust property for their own benefit is presumed to be in breach of their fiduciary duty unless clearly proven to be otherwise.

Affirmed.

SANDERS, C. J., and SHAW, J., concur.