2539

FIRE BAPTIZED HOLINESS CHURCH OF GOD OF THE AMERICAS, Respondent v. GREATER FULLER TABERNACLE FIRE BAPTIZED HOLINESS CHURCH, also known as Fire Baptized Holiness Church of Startex, and also known as Fire Baptized Holiness Church, Appellant.

(475 S.E. (2d) 767)

Court of Appeals

*Donna Earls Elder,* Gaffney, *for appellant.*

*Richard H. Rhodes,* Spartanburg, *for respondent.*

Heard June 4, 1996.

Decided July 8, 1996; Reh. Den. Sept. 24, 1996.

*Per Curiam:*

The Fire Baptized Holiness Church of God of the Americas (the National Church) brought this action for trespass against the Greater Fuller Tabernacle Fire Baptized Holiness Church (the local congregation), alleging the National Church owned the local church building and land in accordance with the National Church's Discipline. The trial court found the subject property belongs to the National Church and ordered the members of the local congregation who had resigned from the National Church to vacate the premises. We affirm.[1]

The National Church was established in 1898 and has since assisted in the establishment of several local affiliations. The 5.09-acre tract of real property which forms the subject of this dispute, and located in Spartanburg County, was deeded to Whit McClintock, Walter McClintock and Wilber Sloan as trustees by deed dated December 18, 1975 (the 1975 deed). After purchasing the land, the members of the local congregation, with financial help from the National Church, constructed a building on the property and have since held services in the building. A dispute developed between the National Church and the local congregation and, in 1994, culminated in the local congregation's formal resignation from "Fire Baptized Holiness movement" and disassociation from the National Church.[2] Simultaneously, the grantees to the 1975 deed executed a document purporting to convey the 5.09 acres of real property to the local congregation (the 1994 deed).

After the local congregation's withdrawal, the National Church served the local congregation with a notice stating that the National Church owned the local church building and property, and ordering the local congregation members to vacate the premises. The members of the local congregation continued to use the property. In January 1995, the National Church brought this action alleging that pursuant to its Discipline and the 1975 deed, it is the owner of the local church building and property. The local congregation answered and counterclaimed, generally denying the National Church's claims, alleging fraud and misrepresentation and seeking an

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

[2] The disenfranchised local congregation thereafter became known as the Agape Praise and Worship Center.

accounting.[3] At trial, the local congregation argued it was not and had never been fully affiliated with the National Church. The local congregation also argued that Church Discipline requires exacting verbiage to convey property to the National Church and, because the 1975 deed does not comport with these requirements, the local congregation is the true owner of the property and building.

The trial court found the National Church was a hierarchial church and that the local congregation had been incorporated into its structure. The trial court further found that the issue of whether the 1975 deed comported with Church discipline so as to effectively transfer the subject property to the National Church was ecclesiastical in nature, and therefore beyond the jurisdiction of the civil court. The trial court also ruled that given the local congregation's alignment with the National Church, the members had no right to take church property with them when they withdrew from the National Church. Based on these conclusions, the trial court issued an order declaring the National Church the owner of the local church building and acreage, declaring the 1994 deed void, and directing all local congregation members who had resigned for the National Church to vacate the premises. This appeal ensued.

I.

On appeal, the local congregation argues the trial court erred in determining it had been incorporated into the National Church's hierarchical structure and that the 1994 deed purporting to convey the subject property to the local congregation was therefore void. While not directly challenging the hierarchial nature of the National Church, the local congregation contends the trial court should have found it was never incorporated into the National Church and is therefore an independent congregational body. We disagree.

A congregational church is an independent organization, self-governing in its religious functions. *Seldon v. Singletary*, 284 S.C. 148, 326 S.E. (2d) 147 (1985). A hierarchical church, on the other hand, "may be defined as one organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiasti-

---

[3] The local congregation later abandoned its counterclaims.

cal head." *Id.* at 149-150, 326 S.E. (2d) at 148 (citing 66 Am. Jur. (2d) *Religious Societies* § 3 (1973)).

A review of the record shows the trial court properly found the local congregation was a part of the National Church's organizational structure. Without question, the National Church is a hierarchical church, composed of bishops, ruling elders, and other officers, as well as trustees. Moreover, the local congregation has always operated as a part of the National Church. Since its inception as a mission church, the local congregation consistently sent delegates to the National Church's annual convention and submitted annual reports to the National Church. The National Church contributed $5,000 to the local congregation to help construct the church building. The current minister of the local church was appointed by the Bishop of the National body at its annual convention. Finally, by letter dated November 16, 1994, the entire local congregation submitted its resignation from the National Church, evidencing that the members of the local congregation considered themselves members of the National Church. We find no error in the trial court's conclusion that the local congregation was an affiliate of the National Church.

The law is well settled that when a church splits, the courts will not undertake to inquire into the ecclesiastical acts of the several parties, but will determine the property rights in favor of the party or division maintaining the church organization as it previously existed. *Bramlett v. Young*, 229 S.C. 519, 93 S.E. (2d) 873 (1956); *Dillard v. Jackson*, 304 S.C. 79, 403 S.E. (2d) 136 (Ct. App. 1991). When the entire congregation withdraws from the hierarchical church, the title to the church property remains in the church and does not follow the congregation. *Dillard*, 304 S.C. 79, 403 S.E. (2d) 136. In this case, the title to the property at issue remained with the National Church, and title is in the trustees, who are under a duty of loyalty to act solely in the best interest of the national Church. *See Ramage v. Ramage*, 283 S.C. 239, 322 S.E. (2d) 22 (Ct. App. 1984) (trustees are under a duty of loyalty to administer the trust property solely in the interest of the beneficiary of the trust, and have a duty to exclude all selfish interest in their dealings on behalf of the beneficiary).

## II.

The local congregation also argues the trial court erred in finding the subject property did not belong to the local congregation because the 1975 deed did not comport with language mandated by the Disciplines of the National Church. Article 16, Section 4 of the Disciplines requires a deed specifically state donated property "shall be for the use and benefit of the ministry and membership of the Fire Baptized Holiness Church of God of the Americas." The subject deed did not state this language verbatim.

The interpretation of the Discipline, and what it mandates, is a matter for the ecclesiastical tribunal of the National Church, not the civil court. Absent fraud or collusion, the decisions of the proper church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive because the parties in interest made them so by contract or otherwise. *See Gonzalez v. Roman Catholic Archbishop of Manila*, 280 U.S. 1, 50 S.Ct. 5, 74 L.Ed. 131 (1929); *but see Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713, 96 S.Ct. 2372, 2382, 49 L.Ed. (2d) 151 (an "arbitrariness" exception to the rule of deference to ecclesiastical tribunals "on matters of discipline, faith, internal organization or ecclesiastical rule, custom or law" can not pass constitutional muster inasmuch as: "For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense "arbitrary" must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else in to the substantive criteria by which they are supposedly to decide the ecclesiastical question. But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them."). *See also Hatcher v. South Carolina District Council of the Assemblies of God, Inc.*, 267 S.C. 107, 226 S.E. (2d) 253 (1976) (a purely ecclesiastical matter is to be determined by church tribunals alone; matters purely of property rights by the civil courts alone). While not inquiring into the wisdom or correctness of ecclesiastical decisions, the court

will make sure that the civil right is in fact dependent upon an ecclesiastical matter; it will determine whether the ecclesiastical body had jurisdiction; it will look to see if the steps required by the religious society have been taken; and will inquire into any charges of fraud or collusion. It will go no further. *Turbeville v. Morris*, 203 S.C. 287, 26 S.E. (2d) 821 (1943); *Hatcher*, 267 S.C. 107, 226 S.E. (2d) 253.

In this case, a civil right, the ownership of property, is dependent upon an ecclesiastical matter, the interpretation of the National Church's rules as promulgated in its Discipline. Having found the local congregation was a part of the National Church organization, and because the local congregation has abandoned its claims of fraud and misrepresentation, this court must accept as conclusive the decisions of the National Church with regards to the subject property. *Hatcher*, 267 S.C. 107, 226 S.E. (2d) 253.

Members of the National Church organization testified a local congregation cannot own church property, regardless of the technical language in the deed. Rather, all property is held in trust by local boards of trustees with the consent of the bishop or the presiding elder. Furthermore, a National Church representative testified the subject deed was in a form sufficient to vest title to the property in the National Church. Again, interpretation of the mandates of the Discipline is an ecclesiastical matter for the legally constituted ecclesiastical tribunal of the National Church. This court must accept the National Church's interpretation of the requirements of its Discipline as conclusive. *Hatcher*, 267 S.C. 107, 226 S.E. (2d) 253.

Moreover, even if we were to construe the deed from the standpoint of whether its language is sufficient to convey title to the National Church, we would still sustain the trial court. The deed clearly purports to convey the property to the "Fire Baptized Holiness Church of Startex," which we have concluded is part of the National Church. There simply was no independent "local church" entity to receive title to the property in 1975.

Accordingly, the order of the trial court is

Affirmed.

CURETON, ANDERSON and STILWELL, JJ., concur.