533 S.E.2d 593

**Greg WILLIAMS and Bill Wines, Individually, and as Trustees and Members of The Christian Church of North Myrtle Beach, and as Representatives of Others Similarly Situated as Members of The Christian Church of North Myrtle Beach, Harrill Lovelace and Clay Crowder, Individually and as Members of The Christian Church of North Myrtle Beach, and as Representatives of other Similarly Situated as Members of The Christian Church of North Myrtle Beach, and Darrel Hall, Respondents,**

v.

**Joel WILSON, Danny Banks, J.W. Mullins, Bob Williamson and E. Richard Powell, Individually and as Present or Former Trustees of The Christian Church of North Myrtle Beach, Appellants.**

No. 3175.

Court of Appeals of South Carolina.

Heard May 10, 2000.

Decided May 30, 2000.

Rehearing Denied Sept. 2, 2000.

HEARN, Chief Judge:

In this action for a declaratory judgment and supporting injunction, Joel Wilson, Danny Banks, J.W. Mullins, Bob Williamson, and Richard Powell appeal the Horry County Master–in–Equity's findings that (1) the Christian Church of North Myrtle Beach is an independent and autonomous congregational church and (2) the special congregational meeting held in June 1998 was legal and effected the removal of the former trustees and the retention of Darrell Hall as minister. We affirm.

## FACTS

In 1994, several members of the Grand Strand Christian Church decided to build another congregation in the Horry County/Georgetown area. These members, Dale Henry, Joel Wilson, Danny Banks, J.W. Mullins, E. Richard Powell, and James Phillip Spruill, formed a committee. They purchased land, erected a building, obtained financing, and staffed the congregation. The church was named the Christian Church of North Myrtle Beach. The men referred to themselves as trustees.

In June 1996, the trustees hired Darrell Hall to serve as the minister/evangelist of the church. Approximately two years later, in May 1998, the trustees met with Hall and voted to dismiss him. At the time only two of the five trustees were members of the church.[1] The trustees made the decision to terminate Hall without consulting the congregation.

The next Sunday, Hall informed the congregation of his dismissal. In response, the congregation decided to hold a congregational meeting following the June 14th Sunday worship service. Dick Powell and Bob Williamson, the two trustees who were also church members, were present at the meeting. The other trustees were not notified and were not present. Neither of the trustees present at the meeting made any objection.

In all, thirty-six members of the congregation were present at the meeting. The members voted twenty-eight to zero to retain Hall as minister. Two ballots were unmarked and six ballots were not used. The congregation also voted to replace the trustees. In their place, Greg Williams, Bill Wines, and Charles Abercrombie were elected as new trustees.[2]

---

1. Although not raised by Respondents in this case, the nonmember "trustees" may lack standing. *See Brock v. Bennett*, 313 S.C. 513, 443 S.E.2d 409 (Ct.App.1994) (holding a former trustee and nonmembers lacked standing to bring an action regarding the physical and spiritual control of a church). Only Dick Powell and Bob Williamson are church members. The other Appellants, Joel Wilson, Danny Banks, and J.W. Mullins are members of Grand Strand Christian Church in Myrtle Beach.

2. Hall states in his testimony that Greg Williams, Clay Crowder, and Charles Abercrombie were elected Trustees. However, the complaint lists Bill Wines as a Trustee and makes no mention of Clay Crowder.

On June 18th, the former trustees sent Hall a letter dismissing him and requesting he return his keys to the church. On June 20th, Hall discovered the church's locks had been changed and notices posted on the church doors.

Hall subsequently filed this action seeking a declaratory judgment that he was the duly-selected minister of the church and Williams, Wines, and Abercrombie were the duly-elected trustees. Hall also sought to enjoin the former trustees from controlling the church building and bank accounts or in any way interfering with the operation of the church.

In July 1998, a circuit judge granted Hall a temporary injunction, maintaining his position as minister and enjoining the former trustees from interfering with his ministerial duties. In October 1998, the master issued a final order declaring Hall the duly-selected minister/evangelist of the church and Williams, Wines, and Abercrombie the duly-elected trustees. The order further enjoined Appellants from interfering in any way with the use of church property. This appeal followed.

## DISCUSSION

By initiating this action, Respondents primarily sought a declaratory judgment supported by accompanying injunctive relief.[3] Actions for injunctive relief are equitable in nature. *Gambrell v. Schriver*, 312 S.C. 354, 356, 440 S.E.2d 393, 394 (Ct.App.1994). In an action in equity tried by a master with direct appeal to the court of appeals, this court may take its own view of the preponderance of the evidence. *See Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976); *see also Tiger, Inc. v. Fisher Agro, Inc.*, 301 S.C. 229, 237, 391 S.E.2d 538, 543 (1989). However, we will not disregard the master's findings, who was in a better position to evaluate the witnesses's credibility. *Tiger, Inc.*, 301 S.C. at 237, 391 S.E.2d at 543.

---

3. While we recognize that the declaratory judgment component of Respondents' action could be construed as an action of law, Respondents' and Appellants' briefs argued the action sounded in equity because "the primary relief sought by [Respondents] was a declaratory judgment and injunctive relief in support of the declaratory judgment." In any event, our disposition would be the same whether reviewing the action as one at law or as one in equity.

Our review is tempered by the general principles that guide civil courts called upon to resolve church disputes. Specifically, the supreme court has noted that:

(1) courts may not engage in resolving disputes as to religious law, principle, doctrine, discipline, custom, or administration; (2) courts cannot avoid adjudicating rights growing out of civil law; [and] (3) in resolving such civil law disputes, courts must accept as final and binding the decisions of the highest religious judicatories as to religious law, principle, doctrine, discipline, custom, and administration.

*Pearson v. Church of God,* 325 S.C. 45, 52–53, 478 S.E.2d 849, 853 (1996) (internal footnotes omitted).

## A.

█ Appellants first argue the master erred in finding the church was an independent, autonomous, congregational church. We disagree.

█ South Carolina recognizes at least two forms of governance for churches: (1) hierarchical; and (2) congregational. *See Fire Baptized Holiness Church of God of the Americas v. Greater Fuller Tabernacle Fire Baptized Holiness Church,* 323 S.C. 418, 421–22, 475 S.E.2d 767, 769 (Ct. App.1996).

A congregational church is an independent organization, self-governing in its religious functions. A hierarchical church, on the other hand, may be defined as one organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head.

*Id.* (internal citation omitted). Thus, in a congregational church, the congregation is the highest religious judicatory. *See Pearson,* 325 S.C. at 53 n. 4, 478 S.E.2d at 853 n. 4.

Despite the two generally recognized forms of church governance, Appellants contend they created a "nonindependent, nonautonomous Christian church," which, unlike other Christian churches, would be solely governed by trustees. They argue their intent as founders was that the church be held in trust, governed by the trustees, with the trustees as the sole owners of church property. Assuming without deciding that a church may be properly held in trust and governed by trust-

ees, we do not believe Appellants established that a trust existed in this case.

For a trust to exist certain elements must be present, including a declaration creating the trust, a trust *res*, and designated beneficiaries. *Whetstone v. Whetstone,* 309 S.C. 227, 231–32, 420 S.E.2d 877, 879 (Ct.App.1992). The declaration of trust must be in writing where trust property includes realty. *Id.*

We agree with the master that the record does not establish the existence of a trust. First, the "trustees" have not produced an executed trust agreement. Second, the church's property is deeded to the church, not to the trustees. Therefore there is no trust *res.* Third, there are no designated beneficiaries. Fourth, Philip Spruill, one of the church's founders, testified the founders originally intended to create a trust but "this trust was never qualified and it never became a reality." Therefore, we conclude the master correctly found Appellants failed to establish the existence of a trust.[4] Under these circumstances, without the formation of a governing trust and in view of South Carolina case law which indicates there are basically two forms of governance for churches, we find the record supports the master's decision that the church is congregational.

## B.

Appellants argue the June 14, 1998 congregational meeting was illegal because it was not announced in accordance with the by-laws. Specifically, Appellants contend they were not properly notified or invited to the meeting. We find no reversible error.

The by-laws require only members to be notified of congregational meetings. Therefore, any lack of notice claimed by the former trustees who were not members is without merit. Moreover, the two former trustees who were members of the church attended the June 14th meeting and failed to object to the holding of the meeting or the vote. Therefore, those two appellants cannot be heard to complain

---

4. At oral argument, counsel for Appellants conceded there was no trust in the true sense of the word.

on this issue because they were present and raised no objection to the proceedings.

As a congregational church, the congregation was entitled to make all decisions relative to retention of a minister and election of trustees. *See Pearson*, 325 S.C. at 49, 478 S.E.2d at 851 ("[T]he Supreme Court made it clear that courts must accept in litigation the religious determinations of the highest judicatories of a religious organization. . . ." (citing *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976))). Accordingly, it is not the function of this court to disturb the wishes of the congregation and we affirm the master's ruling with respect to the validity of the congregation's actions taken at the June 14th meeting.

For the above reasons, the master's judgment is hereby

**AFFIRMED.**

ANDERSON and HUFF, JJ., concur.