22223

Handy S. SELDON, James A. Miller, Louis Leach, George Jenkins, Willow J. Graves, Lonnie L. Merritt, Cephas Davis, Individually and as General Trustees of the Pentecostal Church of the First Born of the Living God, Inc., Appellants. v. Early SINGLETARY and Nero Whack, Individually and/or as Trustees, Deacons or Elders of the Deep River Church, and The Deep River Holiness Church, Respondents.

Allene BRYANT, [and forty-four other individuals], as Members, Trustees and Deacons of The Pentecostal Church of the First Born of the Living God, an Assembly of Persons United by Profession of the same Christian Faith Meeting Together for Religious Worship, Of Whom Eugene Eaddy, [and nineteen other individuals] are Appellants, v. DEEP RIVER HOLINESS CHURCH, Early Singletary, and Nero Whack, Individually and/or as Deacons, Elders or Trustees of Deep River Holiness Church, Respondents.

Appeal of Eugene EADDY.

(326 S. E. (2d) 147)

Supreme Court

*T. Kenneth Summerford,* Florence, *for appellants.*

*Charles E. Godwom Law Office,* Lake City, and *Karl A. Folkens,* Florence, *for respondents.*

Heard Oct. 29, 1984.

Decided Jan. 28, 1985.

LITTLEJOHN, Chief Justice:

These two church property cases were heard separately at the trial level but were, by consent of counsel, argued together on appeal. Both involved identical church property located in Lake City. The church has heretofore been known as "Deep River Church."*

A dispute arose among the members over church policy, doctrine and control of the property. One faction, which we shall call "the dissenters," wished to withdraw from the corporate denomination which is headquartered in Trenton, New Jersey. Its official name is "The Pentecostal Church of the First Born of the Living God, Inc." The other faction, which we shall call "the loyalists," desired to retain the affiliation with the New Jersey church corporation.

Both cases were decided by the trial courts in favor of the dissenters. The loyalists and/or the parent church have appealed.

Religious organizations are generally divided into two groups: (1) congregational churches and (2) hierarchical churches. Understanding the differences is essential to a discussion of the issues involved on appeal. The distinction is adequately set forth in 66 Am. Jur. (2d) *Religious Societies* § 3 as follows:

> A congregational church is an independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government, while a hierarchical church may be defined as one orga-

---

* It is sometimes known as "Deep River Holiness Church."

nized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head. Under the latter system, a local church is but a member of a larger and more important religious organization, and is under its government and control, and the voluntary act of joining the general denominational organization subjects the local church to its rules and regulations. Under the congregational form of government, however, the local church is not subject to the control of any higher ecclesiastical judicature and is self-governing in its religious functions.

A typical example of a hierarchical church is the Presbyterian; typical of the congregational church is the Baptist.

### The First Action

The first action was commenced by Handy S. Seldon, et al., "... individually and as General Trustees of The Pentecostal Church of the First Born of the Living God, Inc." The defendants are Early Singletary and Nero Whack, individually and/or as Trustees, Deacons or Elders of the Deep River Church and the Deep River Holiness Church. Singletary and Whack are among and representative of the dissenters.

Three deeds are made a part of the record involving conveyances of realty with which we are concerned. The first was in 1952. The grantee was "... Warren Smith [and five other individuals], Trustees of Lake City Pentecostal Holiness Church (Colored) their Successors and Assigns." The second deed was executed in 1953 to correct the one of 1952 because there was on such church as that named in the 1952 deed. The grantee in the 1953 deed was "... Warren Smith [and five other individuals], Trustees of the Pentecostal Church of the Living God, their Successors in Office and Assigns." The third was in 1958 wherein the grantee was "... Roosevelt Bryant [and four other individuals], as Trustees for the Pentecostal Church of the Living God, of Lake City, South Carolina, their Successors and Assigns Forever."

The trial judge ruled in favor of the dissenting defendants based on what he perceived to be the intent of the grantors. Plaintiff-parent church has appealed.

In this appeal, it is argued that the property rights are controlled by the holdings in *Young v. Bramlett*, 229 S. C. 519,

93 S. E. (2d) 873 (1956) and *Adickes v. Adkins*, 264 S. C. 394, 215 S. E. (2d) 442 (1975). We agree.

The outcome of this case is dependent upon the simple determination of whether this is or is not a hierarchical church. From a review of the whole of the evidence, we are of the opinion that the only reasonable inference to be drawn is that the local church here involved was a part of the religious organziation headquartered in New Jersey and was under its government and control. That which caused the split within the congregation was beyond question the control which the parent church attempted to assert. The trial court erred in failing to so hold.

### The Second Action

Plaintiff, having failed in the first cause of action, instituted a second cause of action wherein the plaintiff was Allene Bryant and numerous other individuals ". . . as Members, Trustees and Deacons of The Pentecostal Church of the First Born of the Living God, an Assembly of Persons United by Profession of the same Christian Faith Meeting Together for Religious Worship." The defendants were "Deep River Holiness Church, Early Singletary, and Nero Whack, individually and/or as Deacons, Elders or Trustees of Deep River Holiness Church." In this second action, as in the first, the plaintiffs are in essence the loyalists and the defendants are the dissenters. The gist of the second cause of action is to relitigate the right to control the church property. In this second action apparently the attorney for the loyalists (plaintiffs) believed that his clients were a majority of the church members and stipulated that the case was being tried as a congregational religious society.

The law is clear that the majority controls the decisions of a congregational church. *See, Morris Street Baptist Church v. Dart*, 67 S. C. 338, 45 S. E. 753 (1903) and *Whitmire v. Adams*, 273 S. C. 453, 257 S. E. (2d) 160 (1979).

The judge ruled, in an oral order dictated from the bench, that the plaintiffs had failed to prove their case, in effect, giving the property to the dissenters. It should be noted that counsel did not agree that this was a congregational church. He merely stipulated that he was willing to proceed to trial

as a congregational church obviously on the theory that he represented not only the parent church but also a majority of the members.

There can be no serious question but that this is in actuality a hierarchical church. Such being true, the first action should have been, as a matter of law, decided in favor of the loyalists and the parent church, and the second action would not have been necessary.

We, therefore, hold that all proceedings in the second cause of action are moot.

The second cause of action is dismissed. The first cause of action is remanded for the entry of such orders as may be necessary to place the property in control of the Trustees of The Pentecostal Church of the First Born of the Living God, Inc. and the loyalists.

Reversed and remanded.

CHANDLER, JJ., concur.