563 S.E.2d 320

Greg WILLIAMS and Bill Wines, individually and as trustees and members of The Christian Church of North Myrtle Beach, and as representatives of others similarly situated as members of The Christian Church of North Myrtle Beach, Harrill Lovelace and Clay Crowder, individually and as members of The Christian Church of North Myrtle Beach, and as representatives of others similarly situated as members of the The Christian Church of North Myrtle Beach, and Darrel Hall, Respondents,

v.

Joel WILSON, Danny Banks, J.W. Mullins, Bob Williamson and E. Richard Powell, individually and as present or former trustees of The Christian Church of North Myrtle Beach, Petitioners.

No. 25457.

Supreme Court of South Carolina.

Heard Feb. 21, 2002.

Decided April 29, 2002.

Rehearing Denied May 29, 2002.

Randall K. Mullins and Elizabeth J. Saraniti, both of Mullins Law Firm, P.A., of North Myrtle Beach, for petitioners.

Robert L. Barnett, of Barnett & Wright, P.A., of Myrtle Beach, for respondents.

Justice MOORE.

This is a church dispute. We granted a writ of certiorari to

review the Court of Appeals's decision [1] affirming the master's finding that the dismissal of the preacher by church trustees was a nullity and the congregation's election of new trustees was valid. We affirm in part and reverse in part.

## FACTS

Petitioners (Trustees), who are the founders of The Christian Church of North Myrtle Beach (NMB Church), voted to dismiss the church's preacher, respondent Darrell Hall. In response, the congregation voted to oust Trustees, elected replacement trustees, and overrode the dismissal of Preacher Hall. Trustees retaliated by freezing the church's assets and locking its doors.

Respondents, who are church members, then commenced this declaratory judgment action to determine Preacher Hall's employment status and the legitimacy of the newly elected trustees, and for injunctive relief. After issuing a temporary injunction, the circuit court referred the case to the master-in-equity. The master found NMB Church was a congregational church and, as such, the congregation held the ultimate authority over all church matters. Accordingly, he ruled the ouster of Trustees was legitimate and Preacher Hall's dismissal was a nullity. Further, he enjoined Trustees from interfering with the congregation's access to church assets. On appeal, the Court of Appeals affirmed.

## ISSUES

1. Did the Court of Appeals properly affirm the master's finding that NMB Church is a congregational church?
2. Did the Court of Appeals's analysis infringe the right to freedom of religion?
3. Was the special congregational meeting at which the new trustees were elected a legal meeting?

## DISCUSSION

### *Standard of review*

We begin by noting our agreement with the Court of Appeals's finding that this is an action in equity and therefore

---

1. *Williams v. Wilson,* 341 S.C. 136, 533 S.E.2d 593 (Ct.App.2000).

the applicable standard of review is our own view of the preponderance of the evidence. *See Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976). Whether an action for declaratory relief is legal or equitable in nature depends on the plaintiff's main purpose in bringing the action. *Doe v. South Carolina Medical Malpractice Liability Joint Underwriting Assoc.*, 347 S.C. 642, 557 S.E.2d 670 (2001). Respondents' main purpose in bringing this action was to enjoin Trustees' present and future interference in church matters. Accordingly, this is an equitable action and we may take our own view of the evidence.

Further, it is important to note our limited jurisdiction over church matters. Church disputes may be resolved by the courts only if resolution can be made without extensive inquiry into religious law. It is not the function of the courts to dictate procedures for a church to follow. *Pearson v. Church of God*, 325 S.C. 45, 478 S.E.2d 849 (1996); *Knotts v. Williams*, 319 S.C. 473, 462 S.E.2d 288 (1995). To preserve "complete religious liberty, untrammeled by state authority," we limit our inquiry into church affairs and respect the boundaries of church self-governance. *Pearson*, 325 S.C. at 52, 478 S.E.2d at 852–53.

### Form of church governance

The NMB Church was founded by Trustees as a Christian Church, which is also referred to as the Church of Christ, in 1994. Trustees were members of another Christian Church, the Grand Strand Christian Church, and all but two of them remained members of that church even after founding the NMB Church.[2] Trustees acquired the church property in June 1994 and constructed the church building on it. The church was incorporated as a nonprofit corporation in March 1995. Trustees hired Preacher Hall at the end of May 1996 and he began his tenure at NMB Church on June 18, 1996.

On June 30, Trustees approved a "Constitution and By Laws" (hereinafter "the bylaws") that became effective July 1, 1996. The bylaws provide regarding trustees as follows:

---

**2.** Under Christian Church doctrine, a person can be a member of only one church at a time.

## ARTICLE I, SECTION III

1. The church is set up as a "Trust" under the direction of the Trustees named herein.

## ARTICLE IV, SECTION 11

3. TRUSTEES: The Church formed under the direction of a Board of Trustees, named here as they may add to or change:

[naming Trustees]

A. DUTIES OF TRUSTEES: Trustees shall act as legal agents of the Church in all business matters. Hold legal title to all church property and handle all business transactions related thereto; have supervision over all endowment and trust funds; and discharge such duties as the law of South Carolina enjoins upon them.

　A1) As an advisory board to the church leaders of [NMB Church]

　A2) Duties as given in the Article of Organization [3]

B. MINIMUM NUMBER OF TRUSTEES (6)

C. QUALIFICATIONS: Must be active member of the Christian Church

D. ELIGIBILITY: Shall be based upon the decision of other trustees.

On the subject of a preacher, the bylaws provide:

## ARTICLE VII, SECTION 1

1. The Minister shall be elected for an indefinite term, and a contract agreeable to the Board of Elders and Deacons and Minister shall be entered into.

. . .

3. The Elders shall appoint the Pulpit Committee. . . . . When a vacancy occurs in the pulpit, it shall be their duty to carry on proper correspondence with candidates for the pulpit. The recommended candidate's qualifications shall be submitted to the Church Board [4] for their approval.

---

3. There is no "Article of Organization" included in the bylaws.

4. The term "Church Board" is not defined in this document but appears in context to refer to the Board of Trustees.

If approved, the recommended candidate shall be invited to meet with the Elders and Deacons prior to conducting a Worship Service. . . . . Then following the service a congregational vote shall be cast to determine whether the candidate shall be elected to fill the pulpit. . . . .

4. The congregation reserves the right to dismiss any Minister at any time. . . . . The dismissal of a Minister of this congregation shall be by the recommendation of majority of all Elders and Deacons and a majority vote of the eligible members present at a congregational meeting.

The contested action regarding the preacher and new trustees took place at a special congregational meeting held on June 14, 1998, after the approval of these bylaws.

■ The evidence is uncontested that Christian Churches are independent congregational churches governed by their own congregations. The congregation selects the church's trustees and the trustees are always members of that church. In a congregational church, the congregation is the highest authority. *Knotts v. Williams, supra.*

■ In a church dispute, the party asserting a deviation from governance conforming to the affiliated church convention must demonstrate by a preponderance of the evidence that the church adopted an alternative government. *Bowen v. Green,* 275 S.C. 431, 272 S.E.2d 433 (1980). Here, the burden is on Trustees to show the NMB Church was established as other than a congregational church since they are asserting that they, and not the congregation, are the highest authority.

The testimony of Trustees at the hearing before the master is conflicting on their intent as the founders of NMB Church. Trustee Spruill testified the Board of Trustees was intended to act as an advisory committee that "would derive its authority from the principal that was recognized or represented. That being the church." He stated that although the church had not ordained any elders, which is "a spiritually guided process," the church was now able to handle its own affairs. His understanding was "the trustees serve a legal capacity at the pleasure of the elders and in turn the elders are elected by the congregation members. Therefore the ultimate authority flows to the members." Trustees Powell and Wilson, on the other hand, felt they had the authority to control the church

property and dismiss the preacher because the church was set up as a "trust."

Whatever the original intent of the Trustees in 1994 when the church was founded, they memorialized its form of government by approving the church bylaws in 1996. The church bylaws clearly reserve to the congregation the right to dismiss the preacher which is consistent with the convention of Christian Churches as congregational. Accordingly, Trustees had no authority to dismiss Preacher Hall and the master properly ruled the dismissal was a nullity.

The bylaws, however, do not clearly follow the Christian Church convention of congregational authority in regard to the election of trustees. There is no express provision regarding the election of trustees. Article IV, section II(3)(A), provides: "The Church [is] formed under the direction of a Board of Trustees, named here as they may add to or change." This language may be construed as creating a self-perpetuating Board, which would remove from the congregation the right to elect new trustees.

We find this language is not sufficient, however, to carry Trustees' burden of proving an alternative church government vesting them with the highest authority. The same provision of the bylaws also specifies that the Board of Trustees is "an advisory board to the church leaders," language which supports the conclusion a congregational form of government was intended. The ambiguity of the bylaws and the conflicting testimony regarding the intent of the founders is insufficient to prove the adoption of an alternative to the conventional Christian Church governance by congregation.

Further, although the bylaws provide that the Board of Trustees will "hold legal title to all church property and handle all business transactions related thereto [and] have supervisions (*sic*) over all endowment and trust funds," this provision does not clearly give Trustees the ultimate authority over church matters but merely indicates the Trustees' function as business managers who will answer to the congregation. Accordingly, the bylaws do not overcome the presumption that the church is ultimately governed by the congregation according to the Christian Church convention.

We find Trustees have failed to carry their burden of proving an alternative form of church governance and conclude the master properly found the NMB Church is a congregational church.

### Freedom of religion

In affirming the master, the Court of Appeals noted that "South Carolina recognizes at least two forms of governance for churches: (1) hierarchical; and (2) congregational." It found Trustees had failed to show all the legally required elements of a trust and therefore the NMB Church was not a trust but congregational. Trustees contend this analysis limits the church's ability to choose its own form of government and infringes its right to the free exercise of religion.[5]

■■■ We agree the Court of Appeals's abbreviated analysis in determining the church's form of government appears to limit the form of church government to those recognized forms. As discussed above, however, the preponderance of the evidence, including the intent of the founders and the church bylaws, supports the ruling that the NMB Church is in fact a congregational church. Our analysis does not infringe on the church's ability to chose any alternative form of government.

### Election of new trustees

Finally, Trustees contend the meeting at which the congregation voted to reinstate Preacher Hall and to elect the new trustees was illegal because notice was not given to Trustees. This issue affects only the validity of the election of new trustees since the dismissal of Preacher Hall by Trustees was a nullity and his reinstatement by the congregation was not required.

The bylaws provide that notice of a special congregational meeting must be given for the two preceding Sundays and written notice sent five days before the meeting to all *members* of the church.[6] Only two Trustees were members of the

---

5. See S.C. Const. Art. I, § 2.

6. This provision regarding a "special congregational meeting" (Article VI, section I, ¶ 3), rather than the provision governing a "special

NMB Church, Trustee Powell and Trustee Williamson.[7] Under the bylaws, they were entitled to notice and it is undisputed they did not receive it.[8] These two Trustees were not aware of the meeting until the day it occurred. Both did attend and neither objected at the meeting that they were not given notice.

■ In response to Trustees' claim the meeting was held illegally, respondents contend Trustees have failed to show prejudice from the lack of notice. Rather than inquiring into prejudice, in light of our restraint in dealing with church disputes, we resolve this issue by simply requiring compliance with the church's own bylaws rather than determining whether a deviation was harmless. *See Hatcher v. South Carolina Dist. Council of Assemblies of God, Inc.*, 267 S.C. 107, 226 S.E.2d 253 (1976) (civil courts will accept as conclusive the decision of a legally constituted ecclesiastical tribunal having jurisdiction of the matter absent fraud, collusion, or arbitrariness).

In conclusion, since the congregational meeting was not properly noticed to all members as required, we reverse the Court of Appeals's decision on this issue. Although the congregation has authority to elect its trustees under the congregational form of church governance as discussed above, this authority was not properly exercised according to the church bylaws.

## CONCLUSION

We affirm the holding that Preacher Hall's dismissal by Trustees was a nullity but reverse the holding that the new

business meeting" of Trustees (¶ 2), applies in light of our conclusion that the election of trustees is accomplished by the congregation and not the trustees.

7. As noted above, the other Trustees remained members of the Grand Strand Christian Church and under church doctrine a person can be a member of only one church at a time.

8. Preacher Hall admitted he intentionally omitted giving Powell and Williamson notice of the meeting.

trustees were properly elected.[9]

**AFFIRMED IN PART; REVERSED IN PART.**

TOAL, C.J., WALLER, BURNETT and PLEICONES, JJ., concur.

---

9. Although Trustees will retain their positions until further action by the congregation, the injunction forbidding them from interfering with the congregation's access to church assets accords with congregational control and remains valid.