730 S.E.2d 916

**Thomas C. McCAIN, Sr., and Joseph Curry, individually and as trustees of the Mount Canaan Baptist Church; James E. Johnson and Nathan Goodwin, individually and as deacons of the Mount Canaan Baptist Church, Respondents,**

v.

**G.L. BRIGHTHARP, Appellant.**

Appellate Case No.2009–146066.

No. 5005.

Court of Appeals of South Carolina.

Heard Dec. 5, 2011.

Decided July 18, 2012.

Robert A. Mullins, of Mullins Law Firm, P.C., of Augusta, Georgia, for Appellant.

Herbert E. Buhl, III, of Columbia, for Respondents.

PER CURIAM.

In this ecclesiastical dispute wherein church trustees and deacons of Mount Canaan Baptist Church (Respondents) sought to enjoin G.L. Brightharp from continuing to act as pastor and reinstate Respondents to their former positions, Brightharp appeals the trial court's order finding him in contempt, arguing the trial court erred in: (1) assuming subject matter jurisdiction; (2) declaring any actions taken by the church null and void, and ordering him to reinstate Respondents to their former positions as trustees and deacons; and (3) holding him in contempt of court.

**FACTS**

Brightharp is the pastor of Mount Canaan Baptist Church (the Church) in Trenton, South Carolina. At a joint board meeting of the Church trustees and deacons on September 11, 2007, attended by Respondents and fourteen other board members, twelve members voted to terminate Brightharp's contract as pastor and moved to have a vote by the Church conference.[1] During the meeting, Brightharp stated "he knew

---

1. Thomas McCain, a Church trustee, testified a church conference is a meeting of the entire Church and is open for every member of the Church to attend. He further said the conference is a business meeting of the Church and is announced in advance from the pulpit. Article IV, Section 6(a), of the Church's By–Laws provides: "Should a change be desired on the part of the Pastor or the Church, a 60–day Notice shall be given by either party. It shall require a simple majority vote of the members present at a regular business meeting to ensure this action;

nothing" about discord concerning "the condition and direction of the [C]hurch." Later that same day, at a Church conference meeting attended by Respondents and forty-eight Church members, Brightharp stated he did not want to "split the Church" and would resign rather than proceed with the vote before the Church conference.[2] Respondents accepted Brightharp's resignation and prepared a written settlement agreement and release of all claims for Brightharp to sign. However, eight days later, Brightharp wrote a letter to members of the congregation notifying them he had chosen not to resign. Respondents informed Brightharp he could not rescind his resignation and gave him trespass notice, prohibiting him from utilizing the Church or its property.[3] Brightharp continued to use the Church's facilities, and on September 23, 2007, announced from the pulpit that a Church conference was scheduled for October 9, 2007.

On October 4, 2007, Respondents filed a complaint in the Edgefield County Court of Common Pleas, requesting the court enjoin Brightharp from continuing to act as pastor and enjoin the Church conference scheduled for October 9. However, the Church met on October 9, as scheduled. The Church also held a meeting on October 22, 2007. During the October 22 meeting, Church members voted to reinstate Brightharp as pastor, remove Thomas McCain and Joseph Curry as trustees, and silence deacons Nathan Goodwin and James Johnson. After the meeting, Brightharp informed McCain he was relieved of his duties effective immediately, and after a November 5, 2007, Church meeting, Brightharp told McCain he was silenced as a member of the Church.

---

and at the close of the sixty day requirement, said action shall be enforced."

**2.** Article IV, Section 6(b), of the Church's By–Laws provides: "Whenever there is an involuntary separation of Pastor and Church, the condition of 60 days leave can be given to the Pastor, with pay, to seek employment; or either 60 days compensation and immediate termination." Section 6(c) provides: "If a Pastor terminates voluntarily, he is expected to submit a resignation at least 60 days in advance of termination."

**3.** McCain testified the letter was not approved by the Church's members. At some point, Brightharp was arrested for trespassing.

Brightharp filed his answer on November 6, 2007, asserting six defenses: (1) breach of contract; (2) wrongful arrest; (3) malicious prosecution; (4) abuse of process; (5) defamation of character; and (6) intentional infliction of emotional distress.[4] Thereafter, on November 20, 2007, Respondents filed an amended complaint, alleging five causes of action: (1) injunction; (2) defamation; (3) intentional infliction of emotional distress; (4) conspiracy; and (5) breach of fiduciary duty.[5]

The Honorable Casey L. Manning held a hearing on the matter on December 13–14, 2007. Judge Manning issued his order on December 21, 2007, declining to rule on the request for a preliminary injunction to enjoin Brightharp from the Church; ordering the reinstatement of Respondents to their positions as trustees and deacons; and declaring any actions taken after September 11, 2007, to be null and void. The Honorable R. Knox McMahon held a second hearing on April 23 and 25, 2008, and he issued his order on June 5, 2008. Judge McMahon determined the board members violated the Church's By–Laws by failing to put Brightharp's resignation before a final Church vote, and Brightharp's removal of Respondents from their Church positions was also in violation of the By–Laws. Therefore, Judge McMahon ordered that Brightharp shall remain as pastor; Respondents shall be reinstated to their former positions; and joint board meetings must be held the first Sunday of every month beginning July 2008. However, on August 12, 2008, after a Church conference, Brightharp wrote to McCain, Goodwin, and Johnson, and informed them they were excluded from Church membership.

On March 9, 2009, Respondents filed a rule to show cause, seeking a finding of contempt against Brightharp for his refusal to abide by Judge McMahon's June 5, 2008 order. Judge McMahon held a hearing on April 30, 2009, and issued his order finding Brightharp in contempt on May 4, 2009. In his order, Judge McMahon found the December 21, 2007 and June 5, 2008 orders were the law of the case, and Brightharp

---

4. Brightharp asserted he was entitled to $1 million in actual damages and $1 million in punitive damages.

5. Respondents alleged that Brightharp made false and defamatory statements about them, and they are entitled to $1 million in actual damages and $1 million in punitive damages.

had not followed either of the orders. Judge McMahon further found the silencing and exclusion of Respondents was unlawful and null and void because the purpose of both orders was to establish the *status quo* to September 11, 2007. Therefore, Judge McMahon found Brightharp was in violation of the two orders for failing to reinstate Respondents to their positions and refusing to allow the joint board meeting scheduled for July 6, 2008 to take place pursuant to the June 5 order. Judge McMahon also ordered the Church to hold four joint board meetings in 2009 on May 5, September 8, November 3, and December 8. Judge McMahon further fined Brightharp $1,000 for his failure to reinstate Respondents and hold four joint board meetings, and in the future, if Respondents were not allowed to fully participate in joint board meetings that Brightharp be fined $1,000 for each meeting. At a Church meeting on May 5, 2009, McCain, Curry, Goodwin, and Johnson were reinstated as members of the Church. Sometime thereafter, Respondents filed another rule to show cause seeking a finding of contempt against Brightharp for his refusal to abide by Judge McMahon's May 4, 2009 order. Judge McMahon held a hearing on October 9, 2009, and issued his order on October 14, 2009, finding Brightharp did not willfully violate the terms of the June 5, 2008 and May 4, 2009 orders. Therefore, Judge McMahon did not hold Brightharp in contempt of those orders. This appeal followed.

## STANDARD OF REVIEW

This case began as an action for declaratory relief. "Whether an action for declaratory relief is legal or equitable in nature depends on the plaintiff's main purpose in bringing the action." *Williams v. Wilson*, 349 S.C. 336, 340, 563 S.E.2d 320, 322 (2002). Respondents' main purpose in bringing this action was to enjoin Brightharp from continuing to act as pastor and reinstate Respondents to their former positions in the church. Therefore, this is an action in equity, and the applicable standard of review is our own view of the preponderance of the evidence. *Id.*

## LAW/ANALYSIS

### I. Subject Matter Jurisdiction

Brightharp argues the trial court erred in assuming subject matter jurisdiction in this case. We disagree.

Brightharp asserts civil courts do not have jurisdiction over internal church disputes and other ecclesiastical matters; therefore, the trial court did not have jurisdiction to hear this case. He maintains that church decisions about selection, appointment, supervision, and removal of ministers and persons in positions of theological significance are ecclesiastical matters that are beyond the reach of civil courts. He further asserts the Church congregation did not remove him, did not accept his resignation, and did not vote to terminate him as pastor; therefore, the trial court lacked subject matter jurisdiction to hear the case.

Respondents assert the December 21 and June 5 orders are law of the case because Brightharp did not appeal from them; however, while it is true that Brightharp did not appeal the orders, subject matter jurisdiction can be raised at any time. "The lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court." *Town of Hilton Head Island v. Godwin,* 370 S.C. 221, 223, 634 S.E.2d 59, 60–61 (Ct.App.2006).

Subject matter jurisdiction is the power a court has to hear cases in the general class to which the proceedings in question belong. *Altman v. Griffith,* 372 S.C. 388, 396 n. 2, 642 S.E.2d 619, 623 n. 2 (Ct.App.2007). Courts have limited review of church matters, and "[c]hurch disputes may be resolved by the courts only if resolution can be made without extensive inquiry into religious law." *Williams v. Wilson,* 349 S.C. 336, 340, 563 S.E.2d 320, 322 (2002). "It is not the function of the courts to dictate procedures for a church to follow." *Id.* "Generally, a civil court has no authority to intervene in cases involving expulsion from church membership where there is no question of an invasion of a civil, property or contract right." *Bowen v. Green,* 275 S.C. 431, 434, 272 S.E.2d 433, 434 (1980). "South Carolina case law is in accord with the view that no review of the ecclesiastical decision follows absent the infringement of those rights but South Carolina authorities do not treat the specific issue of membership expulsion." *Id.* at 434, 272 S.E.2d at 434–35.

"Religious organizations are generally divided into two groups: (1) congregational churches and (2) hierarchical

churches." *Seldon v. Singletary*, 284 S.C. 148, 149, 326 S.E.2d 147, 148 (1985). Our supreme court has explained the differences between the two types of churches:

A congregational church is an independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government, while a hierarchical church may be defined as one organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head.... Under the congregational form of government ... the local church is not subject to the control of any higher ecclesiastical judicature and is self-governing in its religious functions.

*Id.* at 149–50, 326 S.E.2d at 148–49. Our supreme court elaborated on how congregational churches function in *Williams v. Wilson:*

The evidence is uncontested that Christian Churches are independent congregational churches governed by their own congregations. The congregation selects the church's trustees and the trustees are always members of that church. In a congregational church, the congregation is the highest authority.

*Williams,* 349 S.C. at 342, 563 S.E.2d at 323. "The law is clear that the majority controls the decisions of a congregational church." *Seldon,* 284 S.C. at 151, 326 S.E.2d at 149. In *Bowen,* our supreme court took judicial notice that, generally, Baptist churches are governed by their own congregations. *Bowen,* 275 S.C. at 434, 272 S.E.2d at 435. Therefore, "the burden [is] on the party departing from the usual Baptist convention to demonstrate by a preponderance of the evidence that its church had adopted an alternative means of church government and that it was following the procedure prescribed by that church." *Id.*

In *Morris Street Baptist Church v. Dart,* 67 S.C. 338, 343, 45 S.E. 753, 754 (1903), a case involving the dismissal of a pastor, our supreme court held the only questions it had the power to consider were: (1) whether the congregation met, and (2) whether the congregation disposed of the defendant as pastor. If the answers were in the affirmative, the court had no jurisdiction to hear the case. *Id.* In *Williams v. Wilson,*

349 S.C. 336, 343, 563 S.E.2d 320, 323 (2002), the court found the church's bylaws clearly reserved to the congregation the right to dismiss the preacher. Accordingly, the court held the trustees had no authority to dismiss the preacher, and the master in equity properly ruled the dismissal was a nullity. *Id.*

In *Knotts v. Williams*, 319 S.C. 473, 479, 462 S.E.2d 288, 291 (1995), another case involving the dismissal of a pastor, our supreme court held the trial court improperly exercised jurisdiction in the matter because there had been no action by the congregation in regard to the litigation, neither the congregation nor the church was named as a party, and the congregation never approved an agreement to have the court determine the percentage vote necessary to terminate its pastor or who was eligible to vote. In *Pearson v. Church of God*, 325 S.C. 45, 53, 478 S.E.2d 849, 853 (1996), our supreme court held it was not proper for this court to "determine whether the Church acted consistently with its religious laws and doctrines, its system of discipline and administration in revoking [the minister's] ministry. . . . [because that] would be a quintessentially ecclesiastical matter over which a court could not exercise jurisdiction."

> The *Bowen* court explained the reasoning behind this rule: The premise upon which the foregoing authority is built is that the ecclesiastical matter was decided by the duly constituted ecclesiastical body having jurisdiction. Obviously then, if a decision is reached by some body not having ecclesiastical jurisdiction over the matter, then the civil court would not be bound by that decision. *The appropriate remedy, therefore, would not be to impose an ecclesiastical dictate of the civil court but would rather be to restore the status quo prevailing before the unauthorized action.* Once determination is made that the proper ecclesiastical authority has acted in its duly constituted manner, no civil review of the substantive ecclesiastical matter may take place as this would be prohibited by Amendments I and XIV of the Federal Constitution and Article I, Section 2 of the State Constitution.

*Id.* at 434, 272 S.E.2d at 435 (emphasis added). The *Bowen* court further explained that the appellate court will not deter-

mine who shall or shall not be members of a church or dictate procedure for a church to follow. *Id.* at 435, 272 S.E.2d at 435. In these cases, this court's function is to assure that the church itself has spoken: if it has, *this court inquires no further, but if it has not, this court may restore the status quo to enable the church to act. Id.* (emphasis added).

Mount Canaan Baptist Church's By–Laws, Article IV, Section 6(a), titled "Termination of Pastor," provides:

Should a change be desired on the part of the Pastor or the Church, a 60–day Notice shall be given by either party. It shall require a simple majority vote of the members present at a regular business meeting to ensure this action; and at the close of the sixty day requirement, said action shall be enforced.

McCain testified that only the Church's congregation can terminate the pastor, not the joint board, and if there is no vote of the congregation, the pastor continues in his position. Johnson, a Church deacon, also testified this was the church's procedure, and there was no vote of the congregation in this case. Here, Brightharp stated he was resigning as pastor before the Church congregation was given the chance to vote on whether they wanted to terminate him. Thereafter, Brightharp decided not to resign, and Respondents' attempted to enforce Brightharp's resignation. Therefore, because the Church congregation did not vote to dispose of Brightharp as pastor prior to this litigation, we find the trial court had subject matter jurisdiction to restore the *status quo* to September 11 to enable the Church to act pursuant to its By–Laws.

## II. Reinstatement of Trustees and Deacons

Brightharp argues the trial court erred in declaring any actions taken by the Church null and void and ordering him to reinstate Respondents to their former positions as trustees and deacons. We disagree.

Brightharp asserts the Church congregation voted to exclude Respondents from the Church; therefore, the trial court did not have subject matter jurisdiction to order reinstatement or declare the Church's actions null and void.

The Mount Canaan Baptist Church's By–Laws state the Board of Trustees is comprised of deacons and trustees. Article VI, Section 7, titled "Removal from the Trustee Board," provides:

> Any trustee who fails to discharge his duties or is found to be inefficient shall first be counseled by the Pastor and a committee of Trustees. If he fails to rectify his ways, he shall be removed from the Trustee Board by a simple majority vote of the Church members present in a regular business meeting.

McCain testified that this is the procedure established by the Church to remove and silence trustees and deacons, and he was not counseled prior to his removal. Johnson and Goodwin also testified they were not counseled. Because Respondents were removed without prior notice or counseling by the pastor and a committee of trustees, as required by the Church's By–Laws, we find the trial court properly found their dismissals were a nullity.

## II. Contempt

Brightharp argues the trial court erred in holding him in contempt because the court did not have subject matter jurisdiction. Furthermore, he asserts he could not comply with the court's order because he had no ability to restore Respondents as members of the Church, as the Church congregation holds that authority.

We find the court had subject matter jurisdiction to restore the *status quo* to September 11 to enable the Church to act pursuant to its By–Laws. However, we need not address whether the court erred in holding Brightharp in contempt because he did not appeal from the order finding him in contempt of court. A decision on contempt rests within the sound discretion of the trial court. *Ex parte Cannon,* 385 S.C. 643, 660, 685 S.E.2d 814, 823 (Ct.App.2009). A contempt order is a final order that is immediately appealable. *Id.* "It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review." *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). Therefore, this issue is not preserved for our review.

## CONCLUSION

Accordingly, the trial court's order is

**AFFIRMED.**

SHORT, WILLIAMS, and GEATHERS, JJ., concur.