SHORT, J.:
**325 The Refuge Temple Church of God in Christ, Inc. (the Church) appeals from the circuit court's order granting judgment to Delories Jenkins (Respondent) for breach of contract, arguing the circuit court erred in (1) ruling on this case because civil courts lack subject matter jurisdiction to rule on ecclesiastical matters; (2) finding the alleged contract at issue was properly executed and approved; and (3) finding the Church waived its objections by operating pursuant to the alleged contract for several years. We reverse.
FACTS
Pastor Elder Edward Jenkins, Respondent's husband, founded the Church in June 1997. Pastor Jenkins served as the Church's incorporator, first pastor, and chair of the Board of Directors (Board). Pastor Jenkins incorporated the Church under the laws of South Carolina as a nonprofit corporation through Articles of Incorporation (the Articles) filed in June 1997. Article V of the Articles states a three-director Board manages the affairs of the Church. Article VI of the Articles reveals the initial Board consisted of Pastor Jenkins, Connie Bowman, and Gary James, Sr.
The initial Board of the Church adopted bylaws in June 1997. These bylaws provide the congregation's members would be nonvoting members and the Board members would be voting members. The bylaws require individuals to attend worship services at the Church for at least three consecutive months prior to consideration for membership. The bylaws authorize the Board to manage the affairs of the Church, impose upon the Board a fiduciary obligation to the *16 Church, and mandate the Board will consist of no less than three members. The bylaws establish a majority of the Board shall constitute a quorum, and specify the act of a majority of the Board shall be the act of the Board. The bylaws grant the pastor the authority to fill any vacancy in the Board with the advice and consent of a majority of the present Board. Finally, **326 the bylaws allow the Board to authorize any officer or agent of the Church to enter into any contract or execute and deliver any instrument on behalf of the Church.
On March 13, 2002, the Board, consisting of Pastor Jenkins, Bowman, and Daniel Webster Ward, Jr., held a special meeting to consider and vote on an employment agreement entitled "Pastor's Employment and Retirement Agreement" (the Agreement) to retain Pastor Jenkins as the Church's pastor for life. After discussion, Ward made a motion to approve the Agreement, which Bowman seconded. The Board unanimously adopted the Agreement.
Section four of the Agreement, entitled "Death of Pastor," provides in pertinent part:
In the event of the Pastor's death, if Pastor is survived by his spouse, [Respondent], a monthly sum equivalent to the Pastor's monthly salary and housing allowance, which will become salary at the time of his death shall be paid to [Respondent] for the remainder of her life, even if she leaves the church.
Section six of the Agreement explains the Agreement is binding on all parties, revokes all prior employment agreements with respect to Pastor Jenkins, and states, "It is also[ ] agreed that in the event of Pastor's death or total disability, this Agreement shall become irrevocable."
The Church employed and paid Pastor Jenkins until his death on April 4, 2004. After Pastor Jenkins's death, the Church began paying Respondent $1,575 each month. On April 5, 2005, the Church's new pastor, Pastor Elder Wayne Penn, received a letter from Mozzini Justice, an accounting firm hired by the Church, informing him that Respondent had been receiving a housing allowance and salary from the Church and recommending the Church reclassify the payment as a retirement plan as opposed to income for tax purposes because the payments "weren't quite legitimate." On February 4, 2010, the Church wrote a letter to Respondent proclaiming the Church could no longer afford to keep paying her the monthly amount of $1,575. The letter explained the Church had been compensating Respondent "in honor of the service of yourself and your late husband, our pastor, the Elder Edward Jenkins and to help you financially during the transition." The Church's **327 letter stated Respondent would receive the regular payment amount for February and March 2010, and then a reduced amount of $500 from April 2010 until December 2010, at which time the payments would cease. However, Respondent never received another payment after a $500 check in April 2010.
On February 25, 2011, Respondent filed a complaint against the Church alleging breach of contract, failure to pay wages under the South Carolina Payment of Wages Act,[1] and tortious interference with contract. After presenting her case in a bench trial, Respondent withdrew her claim for tortious interference with contract and dismissed the individual defendants named in her lawsuit, leaving only the Church in its official capacity. In its order granting judgment to Respondent, the circuit court found the Agreement a valid and enforceable contract, determined the Board possessed the authority to execute the Agreement, and noted the Church honored the Agreement with Respondent from 2004 to January 2010. As to her second cause of action, the circuit court found Respondent was not entitled to recover under the South Carolina Payment of Wages Act. The Church filed a Rule 59(e), SCRCP motion, seeking reconsideration of the decision, which the circuit court denied. The Church appeals.
STANDARD OF REVIEW
"An action for breach of contract is an action at law." Electro-lab of Aiken, Inc. v. Sharp Constr. Co. of Sumter , 357 S.C. 363, 367, 593 S.E.2d 170, 172 (Ct. App. 2004). "In an action at law, on appeal of a case tried without a jury, the appellate court's standard *17 of review extends only to the correction of errors of law." Id. "[T]he findings of fact of the [circuit court] will not be disturbed upon appeal unless found to be without evidence which reasonably supports the [circuit court]'s findings." Townes Assocs., Ltd. v. City of Greenville , 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).
LAW/ANALYSIS
I. Subject Matter Jurisdiction
The Church argues the circuit court erred in hearing this dispute because civil courts lack subject matter jurisdiction to **328 rule on the ecclesiastical matters present in this case. We disagree.
"Our case law has recognized that civil courts 'do have jurisdiction as to civil, contract[,] and property rights which are involved in a church controversy,' even though they have no jurisdiction of 'ecclesiastical questions and controversies.' " Pearson v. Church of God , 325 S.C. 45, 51, 478 S.E.2d 849, 852 (1996) (quoting Bramlett v. Young , 229 S.C. 519, 537-38, 93 S.E.2d 873, 882 (1956) ). In Jones v. Wolf , the Supreme Court of the United States approved of the use of neutral principles of law as a means of adjudicating ecclesiastical disputes. 443 U.S. 595, 602, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979).
The neutral principles of law approach adopted by the South Carolina Supreme Court in Pearson provides:
(1) [C]ourts may not engage in resolving disputes as to religious law, principle, doctrine, discipline, custom, or administration; (2) courts cannot avoid adjudicating rights growing out of civil law; (3) in resolving such civil law disputes, courts must accept as final and binding the decisions of the highest religious judicatories as to religious law, principle, doctrine, discipline, custom, and administration.
325 S.C. at 52-53, 478 S.E.2d at 853. Under this rule, "where a civil court can completely resolve a church dispute on neutral principles of law, the First Amendment commands it to do so." All Saints Par. Waccamaw v. Protestant Episcopal Church in Diocese of S.C. , 385 S.C. 428, 445, 685 S.E.2d 163, 172 (2009). "Where a civil court is presented an issue which is a question of religious law or doctrine masquerading as a dispute over church property or corporate control, it must defer to the decisions of the proper church judicatories in so far as it concerns religious or doctrinal issues." Id.
Initially, we note the Church raised the issue of subject-matter jurisdiction for the first time on appeal. However, "[t]he issue of subject matter jurisdiction may be raised at any time[,] including for the first time on appeal to this [c]ourt." Tatnall v. Gardner , 350 S.C. 135, 137, 564 S.E.2d 377, 378 (Ct. App. 2002).
The Church first asserts a "ministerial exception" based on the First Amendment bars courts from adjudicating **329 claims concerning contracts between a church and a minister, citing Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C. , 565 U.S. 171, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012). We find the Church has improperly raised the ministerial exception as a jurisdictional argument because the exception "operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." Id. at 195, n.4, 132 S.Ct. 694. "[T]he issue presented by the exception is 'whether the allegations the plaintiff makes entitle [it] to relief,' not whether the court has 'power to hear [the] case.' " Id. (quoting Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010) ). The Church did not plead or otherwise raise this defense to the circuit court and the circuit court issued no ruling on this defense. See Rule 12(b), SCRCP ("Every defense, in law or fact, to a cause of action in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading ...."); see also Adams v. B & D, Inc. , 297 S.C. 416, 419, 377 S.E.2d 315, 317 (1989) ("[A]ffirmative defense[s] ... must be [pled] and proved."). Therefore, the Church is precluded from raising this defense for the first time on appeal. Adams , 297 S.C. at 419, 377 S.E.2d at 317 ("An issue not raised before the [circuit] court will not be addressed on appeal.").
Regardless, we believe the ministerial exception described in Hosanna-Tabor is inapplicable *18 in this situation. In Hosanna-Tabor , the Supreme Court of the United States held that a "ministerial exception" grounded in the First Amendment barred an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. 565 U.S. at 190, 132 S.Ct. 694. The Supreme Court explained, "The exception ... ensures that the authority to select and control who will minister to the faithful ... is the church's alone." Id. at 194-95, 132 S.Ct. 694. However, the Supreme Court clarified, "[w]e express no view on whether the exception bars other types of suits, including actions by employees alleging breach of contract or tortious conduct by their religious employers." Id. at 196, 132 S.Ct. 694 (emphasis added).
In contrast, the parties in this case are not asking this court to resolve an employment discrimination suit or a dispute over who will lead a church, but rather to determine the validity of **330 a contract between a church and a former minister's wife. Additionally, the Supreme Court expressly refused to hold whether the ministerial exception bars other types of suits, such as breach of contract, which is the type of action brought in this case. Thus, we find the ministerial exception is inapplicable.
The Church next argues the resolution of the issues in this case requires extensive inquiry into religious matters and this court is therefore unable to adjudicate this dispute under neutral principles of law. In applying neutral principles of law to the facts of this case, we find a court's exercise of jurisdiction over this matter would not violate the federal or state constitutions. This case does not contain disputes as to religious law, principle, doctrine, discipline, custom, or administration. This case presents a temporal issue: the validity of a contract involving a church and a former minister's wife providing for monthly payments by the church to the wife after the death of her husband. "Where ... a church controversy necessarily involves rights growing out of a contract recognized by the civil law, ... civil tribunals cannot avoid adjudicating these rights." Pearson , 325 S.C. at 52, 478 S.E.2d at 853 (quoting Morris St. Baptist Church v. Dart , 67 S.C. 338, 341-42, 45 S.E. 753, 754 (1903) ). Although we recognize we must accept "as final and binding the decisions of the highest religious judicatories of the [Church] as to religious doctrine and discipline," we find the resolution of this dispute requires only "the application of neutral principles of contract law and very little inquiry into religious law." Pearson , 325 S.C. at 52-53, 478 S.E.2d at 853. Accordingly, we find the circuit court did not err in exercising jurisdiction over this case.
II. Contract Validity
The Church argues the circuit court erred in finding the Agreement valid because the Board that executed the Agreement lacked proper authority, and the Agreement was tainted by conflict of interest. We agree.
Before resolving this dispute under neutral principles of law analysis, we must determine the "highest religious judicatories" of the Church to comply with the third directive **331 expressed in Pearson . See Pearson , 325 S.C. at 52-53, 478 S.E.2d at 853 ("[I]n resolving such civil law disputes, courts must accept as final and binding the decisions of the highest religious judicatories as to religious law, principle, doctrine, discipline, custom, and administration."). "Religious organizations are generally divided into two groups: (1) congregational churches and (2) hierarchical churches." Seldon v. Singletary , 284 S.C. 148, 149, 326 S.E.2d 147, 148 (1985). "A congregational church is an independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government." Id. (quoting 66 Am.Jur.2d Religious Societies , § 3 ). "[A] hierarchical church may be defined as one organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastic head." Id. at 149-50, 326 S.E.2d at 148.
It is undisputed the Church is a hierarchical church. Accordingly, Pearson mandates we must accept as final and binding the decisions of the highest ecclesiastical tribunal of the Church, as to religious law, principle, doctrine, discipline, custom, and administration.
*19 See Pearson , 325 S.C. at 53 n.4, 478 S.E.2d at 853 n.4 ("In religious organizations of a hierarchical nature, courts would interpret the final actions of the highest ecclesiastical tribunal or body."). With this determination in mind, we turn to the facts of this case.
The Church first argues Pastor Jenkins improperly appointed two of the members of the Board who executed the Agreement, Bowman and Ward. Because the Church is organized as a South Carolina nonprofit corporation, the governing law for determining the proper election of board members is the South Carolina Nonprofit Corporation Act (Non-Profit Act), specifically sub-section 33-31-804(b) of the South Carolina Code (2006). However, section 33-31-180 of the South Carolina Code (2006) provides: "If religious doctrine governing the affairs of a religious corporation is inconsistent with the provisions of this chapter on the same subject, the religious doctrine controls to the extent required by the Constitution of the United States or the Constitution of South Carolina, or both." Additionally, because the method of electing a hierarchical church's board members is a matter of church polity, we **332 must defer to the decisions of the highest ecclesiastical body of the Church, as dictated in the Official Manual of the Church of God in Christ (Official Manual). See Pearson , 325 S.C. at 52-53, 478 S.E.2d at 853 ("[I]n resolving such civil law disputes, courts must accept as final and binding the decisions of the highest religious judicatories as to religious law, principle, doctrine, discipline, custom, and administration.").
A secular review of the Official Manual reveals the requirement that all trustees of local churches must be members of the church. See Pearson , 325 S.C. at 51, 478 S.E.2d at 852 ("In undertaking an examination of religious documents, such as a church constitution, a civil court 'must take special care to scrutinize the document in purely secular terms.' " (quoting Jones , 443 U.S. at 604, 99 S.Ct. 3020 ) ). The Official Manual also provides, "In all cases where the laws require a special mode of election of Church [directors], that mode must be followed .... Where, however, no particular mode of election of [directors] is established or required by law, then the [directors] shall be elected by a majority of the members of the congregation." Finally, the Official Manual allows a local church to establish its own bylaws so long as the bylaws do not conflict with "the Charter, Constitution, Laws and Doctrines of the Church of God in Christ."
Accepting these determinations in the Official Manual, we find the governing law in this case, section 33-31-804(b) of the Non-Profit Act, lists no particular requirement for the election of the Board. See § 33-31-804(b). Therefore, we are bound to accept the Official Manual's mandate that the majority of the members of the congregation shall elect the members of the Board.
Accordingly, we believe Pastor Jenkins improperly appointed Bowman and Ward to the Board. Bowman and Ward were qualified members of the Church at the time they were selected to serve on the Board, which complied with the Official Manual.[2] However, Pastor Jenkins appointed both **333 Bowman and Ward to the Board. Although the Church's bylaws grant the Pastor the authority to fill any vacancy on the Board with the advice and consent of a majority of the present Board, these bylaws conflict with the Official Manual's requirement that the majority of the congregation's members elect the members of the Board. Therefore, we find Pastor Jenkins improperly appointed both Bowman and Ward to the Board. Because neither Bowman nor Ward were properly elected to the Board, the Board lacked the authority to execute the Agreement,[3] and we hold the *20 circuit court erred in finding the Agreement a valid and enforceable contract.[4]
III. Laches/Waiver
Lastly, the Church argues the circuit court erred in finding the doctrine of laches barred any objection to the Agreement because the Church operated under the Agreement from March 2002 through April 2010. We agree.
Respondent presented the defense of laches in her proposed order as an additional basis for granting judgment, which the circuit court adopted. For this first time on appeal, Respondent argues the defense of waiver as an additional sustaining ground.
"The equitable doctrine of laches is equivalent to the legal doctrine of waiver, which is the 'voluntary and intentional relinquishment or abandonment of a known right.' " Strickland v. Strickland , 375 S.C. 76, 85, 650 S.E.2d 465, 470 (2007) (quoting Parker v. Parker , 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994) ). "Both laches and waiver require a party to have [ (1) ] known of a right, and [ (2) ] known that **334 the party was abandoning that right." Id. at 85, 650 S.E.2d at 470-71. The party seeking to establish waiver or laches has the burden of proof. See SPUR at Williams Brice Owners Ass'n v. Lalla , 415 S.C. 72, 91, 781 S.E.2d 115, 125 (Ct. App. 2015) ; King v. James , 388 S.C. 16, 28, 694 S.E.2d 35, 41 (Ct. App. 2010).
We find Respondent has failed to meet her burden of establishing waiver or laches. Here, the record shows Pastor Penn testified he had never seen the Agreement until this litigation. Although he acknowledged the Church's payments to Respondent, Pastor Penn explained the Church typically supports widows of former pastors for about five years. The Agreement also does not specify a payment amount, and the evidence in the record is conflicting on the exact amount that Respondent received from the Church each month. Bowman testified no one announced the special meeting about the Agreement, the Board's decision on the Agreement, or the Agreement itself to anyone other than the Board members who signed the Agreement. Ward remembered reading the Agreement and believed someone would present the Agreement to the congregation. Ward also stated he did not tell anyone else in the congregation about the Agreement.
As additional evidence of the Church's ignorance of the Agreement, there were several other terms in the Agreement that the parties never performed. For example, the Agreement provided Respondent would become a permanent member of the Board upon Pastor Jenkins's death. The Agreement also required the Church to purchase a life insurance policy on Pastor Jenkins, and that did not occur. Finally, the Agreement gave Respondent "the controlling voice" in selecting the new pastor once Pastor Jenkins passed away or could no longer perform as pastor. The Agreement stated the Church would not select a new pastor "without the affirmative consent of [Respondent]." However, the only evidence in the record is that Respondent did not "help oversee the process of finding a new pastor." The parties' failure to comply with these additional terms undermines the circuit court's finding that the Church performed under the Agreement for approximately six years, and, thus, waived its ability to challenge the Agreement.
**335 Based on the testimony and evidence in the record, we believe neither the Church's current leadership nor the Church's congregation were aware of the Agreement until this litigation. Although the Church's leadership acknowledged the payments, without knowledge of the Agreement itself, the Church could not have known of its right to object to the Agreement's validity. Because the Church was unaware of the Agreement and its right to object, the Church could not have abandoned this right. Therefore, we hold the circuit court erred in finding the doctrine of laches barred the Church from objecting to the Agreement. We also find *21 Respondent failed to meet her burden under the doctrine of waiver.
CONCLUSION
Accordingly, the decision of the circuit court is
REVERSED.
THOMAS and HILL, JJ., concur.

S.C. Code Ann. § 41-10-10 to -110 (Supp. 2017).

The Church's bylaws require individuals to attend worship services at the Church for at least three consecutive months prior to consideration for membership. Bowman's testimony indicates she was an initial director, rotated off the Board for several years, and then Pastor Jenkins reappointed her to the Board. Ward's testimony indicates he attended the Church for almost a year before Pastor Jenkins appointed him to the Board.

Because we find the Board lacked proper authority to execute the Agreement, we need not address the Church's remaining argument on the Agreement's validity. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding appellate courts need not address remaining issues when disposition of prior issues is dispositive); Whiteside v. Cherokee Cty. Sch. Dist. No. One , 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993).

We note Respondent's counsel acknowledged the contract was invalid at oral argument.